Kim Novell VICTOR, Appellant,

v.

The STATE of Texas, Appellee.

No. 14–97–00537–CR.

Court of Appeals of Texas,
Houston (14th Dist.).

May 13, 1999.

**218**

Tony Aninao, Houston, for appellant.

Rikke Burke Graber, Houston, for appellee.

Panel consists of Justices MAURICE E. AMIDEI, EDELMAN, and WITTIG.

**1.** ·*Batson v. Kentucky,* 476 U.S. 79, 106 S.Ct.

## MAJORITY OPINION

MAURICE E. AMIDEI, Justice.

Kim Novell Victor appeals his conviction by a jury for possession of less than one gram of cocaine. TEX. HEALTH & SAFETY CODE ANN. § 481.115(b) (Vernon 1992 & Supp.1999). The jury assessed his punishment at 16 years, enhanced by two prior felony convictions. In six points of error, appellant contends: (1) the evidence is factually insufficient to support his conviction for knowingly possessing cocaine; (2) the trial court erred in denying his request for a jury instruction to disregard illegally obtained evidence under article 38.23, Texas Code of Criminal Procedure; (3) the trial court erred in denying his *Batson*[1] motion; (4) the trial court erred in overruling his objection to the prosecutor's reference to an extraneous bad act; and (5) and (6) the police did not have probable cause to arrest appellant under the state and federal constitutions. We affirm.

On May 3, 1996, at about 6:30 a.m., Officers Mascheck and Parton interviewed Mae Lenford who reported that she had been sexually assaulted at her apartment in Houston earlier that morning. Ms. Lenford described her attacker as a black male, 5'9" tall, 210 pounds, with red hair, a very fair complexion, and wearing a red shirt and blue jeans. During the attack, Ms. Lenford scratched her attacker's face. She stated that the attacker said his name was "Chili."

At 12.50 p.m. that afternoon, the officers observed a car passenger not wearing a seatbelt. The officers stopped the car, driven by Galvan Dickson, to warn the passenger about the seat belt infraction. When the officers got to the car, a female passenger sitting in the backseat of the car got out, and walked away with the permission of the two officers. The female walked about 20 feet from the car where she stopped and talked to appellant. Officer Mascheck was still standing by Dickson's car when he noticed that appellant

1712, 90 L.Ed.2d 69 (1986).

matched the description of Ms. Lenford's attacker. Mascheck then approached appellant, noticed some scratches on his face, and asked appellant for some identification. After briefly talking to appellant, Mascheck allowed him to leave. Mascheck then returned to the patrol car, where Dickson was sitting in the backseat. Mascheck overheard Dickson tell Officer Parton that appellant was Dickson's roommate, and that appellant came home at 6:00 a.m. that morning with scratches on his face. Realizing that appellant's arrival at home coincided with the time of the attack on Ms. Lenford, the officers then decided to detain appellant for further investigation.

Officers Mascheck and Parton located appellant in a convenience store a few minutes after they learned appellant came home at 6:00 a.m. with scratches on his face. Officer Mascheck told appellant that he was under investigation for sexual assault and escorted him to the patrol car, and then called his sergeant about the case. After learning of the violent assault upon Ms. Lenford and the close resemblance of appellant to the attacker, the sergeant authorized Officer Mascheck to arrest appellant and take him to the police station.

At the police station, Officer Mascheck conducted a thorough search of appellant's pockets, waistband, socks and shoes. Mascheck found a crack pipe in appellant's right front pants pocket. Mascheck testified that the crack pipe was in a little pocket located above a regular pocket, "like a little watch pocket or a little coin pocket." Mascheck described the crack pipe as a piece of glass tubing, approximately four inches long, with steel wool in the end, and some "burnt residue" in the end. Mascheck stated that the burnt area and residue indicated to him that the crack pipe had been used to smoke crack cocaine, and "there was still some residue of crack cocaine in the pipe." Mascheck stated that "residue is what does not burn," and there is "some of it that melts and stays around the edge of the glass." Mascheck gave the crack pipe to Officer Parton for field testing. Another officer performed the field test that showed the presence of cocaine on the pipe. Officer Parton then put the pipe in a special envelope, and deposited the envelope and pipe in the narcotics lock box at the police station.

Debra Stephens, the police chemist, testified that the residue on the crack pipe tested positive for cocaine. Although the residue and cocaine were measurable, she further stated she could not determine the total amount of cocaine that was on the pipe without destroying the residue. She testified that, in her opinion, there was less than one gram of cocaine residue on the pipe.

■ In point one, appellant challenges the factual sufficiency of the evidence to support his conviction for knowingly possessing the cocaine residue found on the crack pipe. Appellant argues that the chemist did not specify an exact *measured* quantity of the residue in question, and the evidence is factually insufficient to prove that appellant knew the substance in his possession was cocaine. We disagree.

Under *Clewis v. State*, 922 S.W.2d 126, 133 (Tex.Crim.App.1996), a court of appeals reviews the factual sufficiency of the evidence when properly raised after a determination that the evidence is legally sufficient. *Id.* In conducting a factual sufficiency review, the court of appeals views all the evidence without the prism of "in the light most favorable to the prosecution" and sets aside the verdict only if it is so contrary to the overwhelming weight of the evidence as to be clearly wrong and unjust. *Id.* In conducting a factual sufficiency review, the court of appeals reviews the fact finder's weighing of the evidence and is authorized to disagree with the fact finder's determination. *Id.* This review, however, must be appropriately deferential so as to avoid an appellate court's substituting its judgment for that of the jury. *Id.* If the court of appeals reverses on

factual sufficiency grounds, it must detail the evidence relevant to the issue in consideration and clearly state why the jury's finding is factually insufficient. *Id.* The appropriate remedy on reversal is a remand for a new trial. *Id.*

A factual sufficiency review must be appropriately deferential so as to avoid the appellate court's substituting its own judgment for that of the fact finder. *Santellan v. State,* 939 S.W.2d 155, 164 (Tex.Crim. App.1997). This court's evaluation should not substantially intrude upon the fact finder's role as the sole judge of the weight and credibility of witness testimony. *Id.* The appellate court maintains this deference to the fact findings, by finding fault only when "the verdict is against the great weight of the evidence presented at trial so as to be clearly wrong and unjust." *Id.*

 To prove unlawful possession of a controlled substance, the State must prove: (1) that appellant exercised actual care, control and management over the contraband; and (2) that appellant had knowledge that the substance in his possession was contraband. *King v. State,* 895 S.W.2d 701, 703 (Tex.Crim.App.1995). The issue is whether the evidence will support a reasonable inference that the defendant knowingly possessed the contraband. *Jackson v. State,* 807 S.W.2d 387, 389 (Tex.App.-Houston[14th Dist.] 1991, pet. ref'd). If the controlled substance can be seen and measured, the amount is sufficient to establish the defendant knew it was a controlled substance. *Mayes v. State,* 831 S.W.2d 5, 7 (Tex.App.-Houston[1st Dist.]1992, no pet.); *Jarrett v. State,* 818 S.W.2d 847, 848 (Tex.App.-Houston[1st Dist]1991, no pet.); *Thomas v. State,* 807 S.W.2d 786, 789 (Tex.App.-Houston[1st Dist.] 1991), *pet. dism'd,* 840 S.W.2d 958, 959 (Tex.Crim.App.1992).

In this case, the chemist testified that residue on the inside of the crack pipe was visible, and that it tested positive for cocaine. Although the amount of residue was measurable, the chemist did not at-tempt to determine an exact weight of the amount of cocaine in the pipe because she would have to use all of the residue in the pipe. In order to preserve the cocaine as evidence, the chemist did not quantitate the exact amount found in the crack pipe. She testified that, in her opinion, there was less than one gram of residue in the pipe. Because the amount in the pipe was less than one gram, the chemist stated there was no need to prove that it was any more than one gram.

Officer Mascheck testified that the pipe had some residue of crack cocaine in it, and the burnt area and residue indicated to him that the crack pipe had been used for smoking the crack cocaine. Mascheck testified that "residue is what does not burn," and there is "some of it that melts and stays around the edge of the glass." At the request of Officer Parton, another officer performed a field test that showed the presence of cocaine on the pipe.

In *King,* the chemist testified that the amount of cocaine present was too small to be measured. *King,* 895 S.W.2d at 703. The court of criminal appeals found the language in *Shults v. State,* 575 S.W.2d 29, 30 (Tex.Crim.App.1979) to be controlling. *Id. Shults* held that "when the quantity of a substance possessed is so small that it cannot be measured, there must be evidence other than mere possession to prove that the defendant knew the substance in his possession was a controlled substance." *Shults,* 575 S.W.2d at 30. "Therefore, the State must prove, through other evidence, that appellant had knowledge that the substance in his possession was cocaine." *King,* 895 S.W.2d at 703. In *King,* the residue containing the cocaine was visible on the crack pipe, but the amount of cocaine was unmeasurable, unweighable, and invisible. *King,* 895 S.W.2d at 704. The evidence also showed the appellant in *King* appeared to be intoxicated and the stem of the pipe was still moist with what appeared to be saliva, which showed that the pipe-smoking was probably in the very recent past. *Id.* The court of criminal

appeals found the evidence legally sufficient to sustain the conviction. *Id.*

In the present case, the residue containing the cocaine was visible and it was *measurable.* The chemist did not attempt to quantify the cocaine because the cocaine would be destroyed in the process. However, she testified that the total weight of the residue containing the cocaine, was less than one gram. Also, the cocaine residue was found in a four inch glass pipe fitted with a filter at one end, and Officer Mascheck testified that this device was drug paraphernalia commonly used to smoke crack cocaine. The fact that the cocaine was found in an item of drug paraphernalia or an item closely associated with drug use is evidence of knowing possession. *See Caballero v. State,* 881 S.W.2d 745, 748 (Tex.App.-Houston[14th Dist.] 1994, no pet.); *Johnson v. State,* 843 S.W.2d 238, 240 (Tex.App.-Houston[14th Dist.] 1992, pet. ref'd); *Sims v. State,* 833 S.W.2d 281, 284 (Tex.App.-Houston[14th Dist.] 1992, pet. ref'd). Appellant did not present any evidence to refute the State's proof of possession. We find that the State proved that the cocaine was visible and measurable, and therefore the evidence was sufficient to prove appellant's knowing possession. *Mayes,* 831 S.W.2d at 7. We further find that the crack pipe was drug paraphernalia, and was further evidence of appellant's knowing possession. *Caballero v. State,* 881 S.W.2d at 748. We cannot say that the verdict was so against the overwhelming weight of evidence as to be manifestly unjust or clearly wrong. We conclude that the evidence presented at trial was factually sufficient to support appellant's conviction. Appellant's point of error one is overruled.

In point of error two, appellant contends the trial judge erred in refusing to instruct the jury to disregard evidence obtained illegally pursuant to article 38.23, Texas Code of Criminal Procedure. Appellant argues the jury could have totally disbelieved the testimony of the officers and found that they were without probable cause to arrest and search appellant.

A trial court is required to include a properly worded article 38.23 instruction to the jury charge only if there is a factual dispute as to how the evidence was obtained. *Thomas v. State,* 723 S.W.2d 696, 707 (Tex.Crim.App.1986). In this case, the appellant did not testify nor did he present any evidence to controvert the testimony of the officers. Appellant's cross-examination of the officers did not raise a fact issue on the right to arrest. *See Rose v. State,* 470 S.W.2d 198, 200 (Tex.Crim.App. 1971); *Trent v. State,* 925 S.W.2d 130, 133–34 (Tex.App.-Waco 1996, no pet.). Because there was no factual dispute about the legality of the arrest and search, appellant was not entitled to an instruction of under article 38.23. *Thomas,* 723 S.W.2d at 707. Appellant's point of error two is overruled.

In point of error three, appellant contends the State struck two black veniremembers in the jury panel in a racially discriminatory manner, and that the trial court erred in overruling appellant's *Batson* motion. The record shows that the prosecutor struck jurors 11 and 12 because they believed the most important goal of punishment was to rehabilitate the defendant. Jurors 11 and 12 were African–American, and the prosecutor struck seven other veniremembers who were not black because they also stated that rehabilitation was the primary goal of punishment. The prosecutor asked the panel what they believed to be the most important issue in assessing a sentence: punishment, deterrence, or rehabilitation. Twenty-four veniremembers responded that rehabilitation was the most important issue to consider when deciding an appropriate sentence. Of those 24, only 17 fell within the group that would ultimately be seated on the jury. The prosecutor said that he believed punishment was an important issue in this case, and he felt that jurors who favored rehabilitation would assess a less severe punishment. After striking eight of

the jurors for cause who favored rehabilitation, there were nine jurors remaining in that group; all nine were stricken by the prosecutor because they favored rehabilitation over punishment, and only jurors 11 and 12 were black.

 A *Batson* inquiry entails a three-step process. First, the opponent of a peremptory challenge must make out a prima facie case of racial discrimination. *Purkett v. Elem*, 514 U.S. 765, 115 S.Ct. 1769, 1770, 131 L.Ed.2d 834 (1995); *Williams v. State*, 937 S.W.2d 479, 485 (Tex.Crim.App.1996). Then, the proponent of the strike must come forward with a race-neutral reason for the challenge. *Id.* Finally, if a race-neutral reason is given, the opponent of the strike shoulders the burden of proving intentional discrimination. *Id.* For the purpose of step two, a reason is deemed race-neutral so long as no discriminatory intent is inherent in the explanation given, even if the explanation is fantastic or implausible. *Id.* Whether the trial judge believes a proffered race-neutral reason is a step-three inquiry, and the opponent of the strike bears the burden of showing that the reason offered is merely a pretext for discrimination. *Id.* Essentially, what the Supreme Court is saying is that our review should be of the third step, that is, the trial court's decision whether the opponent of the strike has proved purposeful racial discrimination. Therefore, we are not to consider whether the race-neutral explanation is "persuasive or even plausible." *Purkett*, 514 U.S. 765, 115 S.Ct.1769, 1771.

In this case, the prosecutor struck *all* veniremembers who favored rehabilitation as the primary goal of punishment. The prosecutor stated that punishment was an important issue in this case. The prosecutor struck seven non-African-American veniremembers as well as two African-American veniremembers because they favored rehabilitation.

 A veniremember's belief in rehabilitation as the primary goal of punishment is a race-neutral reason for the exercise of a peremptory challenge. *Adanandus v. State*, 866 S.W.2d 210, 224–25 (Tex.Crim.App.1993), *cert. denied*, 510 U.S. 1215, 114 S.Ct. 1338, 127 L.Ed.2d 686 (1994). We find the prosecutor's explanations for exercising his peremptory challenges against veniremembers 11 and 12 were racially neutral.

 "A defendant must present impeaching evidence to the trial court if he intends to rely on it later. An appellate court may not reverse a trial court's finding based upon information that was not introduced into evidence or elicited before the trial judge during the voir dire." *Vargas v. State*, 838 S.W.2d 552, 555 (Tex.Crim.App.1992). Appellant has the burden to show purposeful discrimination on the part of the State. The *Vargas* court held, in pertinent part:

> While these reasons [given by the state] would seem stronger had the prosecutor individually questioned all of the stricken venirepersons, the reasons are not rendered racially impermissible simply because he did not do so. Defense counsel did not cross-examine the prosecutor or impeach him on any of his reasons, even when the prosecutor also mentioned white venirepersons whom he claimed he struck for similar reasons as he did venireperson Porter. Defense counsel did not present the trial judge with any comparison, general or detailed, of unchallenged white venirepersons and the black venirepersons who were struck. There is nothing to show that the prosecutor's stated reasons were pretextual. These reasons are racially neutral on their face.

*Id.* at 556.

In the present case, appellant did not cross-examine the prosecutor or impeach him on any of his reasons for striking jurors 11 and 12. Appellant did not present the trial judge with any comparison, general or detailed, of unchallenged non-African-American veniremembers and the

black veniremembers who were struck. There is nothing to show that the prosecutor's stated reasons were pretextual. We find appellant has failed to demonstrate purposeful racial discrimination on the part of the State, and we overrule appellant's point of error three.

■ In point of error four, appellant contends the trial court erred in overruling appellant's objection when the State introduced evidence of extraneous bad conduct. Appellant was initially arrested in connection with the sexual assault of Ms. Lenford. Upon searching appellant at the police station, the officers found the crack pipe and filed this case. Before the trial commenced, the trial court held a hearing on the manner in which the State could question Officer Mascheck as to why the officer was detaining appellant. The trial court ruled that the State could put on evidence that appellant was being detained "regarding another investigation" without mentioning the sexual assault complaint. Appellant objected at the hearing to the State's mentioning "investigation" or "complaint," and the trial court overruled this objection.

During the trial, the State questioned Officer Mascheck and appellant objected, as follows:

> PROSECUTOR: Okay. Was the defendant Mr. Victor detained and arrested from—regarding another investigation?
>
> [OFFICER MASCHECK]: Yes, sir.
>
> PROSECUTOR: Okay.
>
> [APPELLANT'S COUNSEL]: Objection, Your Honor. This is in violation of motion in limine that we filed.
>
> THE COURT: Overruled.

There were no further objections or motions by appellant's counsel. On appeal, appellant contends that the trial court abused its discretion in admitting this extraneous offense conduct because it was not relevant to any contested matter in the litigation. The State argues that the sexual assault investigation was relevant to show why appellant was being searched at the police station, and that the evidence was relevant and admissible as "same transaction contextual evidence," under rule 404(b), Texas Rules of Evidence.

■ Evidence of extraneous offenses that are indivisibly connected to the charged offense and necessary to the State's case in proving the charged offense may be admissible as relevant evidence to explain the context of the offense for which the defendant is on trial. *Lockhart v. State,* 847 S.W.2d 568, 571 (Tex.Crim.App. 1992), *cert. denied,* 510 U.S. 849, 114 S.Ct. 146, 126 L.Ed.2d 108 (1993). In *Lockhart,* appellant was tried for capital murder of a police officer, and the evidence at trial revealed that appellant had stolen a red Corvette from an automobile salesman at gunpoint about four months before the murder, and appellant checked into a motel using the salesman's name. *Id.* The court of criminal appeals found that the evidence described the circumstances surrounding the officer's death and was necessary to the jury's comprehension of the offense. *Id.* "Officer Hulsey would not have gone to appellant's motel room had he not been involved in a car chase with appellant who was driving a stolen car with a stolen license plate." *Id.* "And, Officer Hulsey would not have been following the car driven by appellant had his suspicions not been aroused by what he saw concerning a suspected drug transaction." *Id.* The court of criminal appeals held that the evidence of the attempted drug offense, stolen car, and stolen license plates constituted contextual evidence indivisibly connected to the officer's murder and was therefore relevant under rule 401, Texas Rules of Criminal Evidence (now, Texas Rules of Evidence). *Id.*

In this case, the officers would not have stopped appellant had he not been involved in the sexual assault on Ms. Lenford. While making a routine search of appellant at the police station in connection with the sexual assault, they found the crack pipe for which he was prosecuted in these pro-

ceedings. The evidence of the circumstances under which he was detained for the sexual assault constituted "same transaction contextual evidence" "indivisibly connected to this offense and therefore relevant" under rule 401, Texas Rules of Evidence. *Id. See also Rogers v. State*, 853 S.W.2d 29, 32–33 (Tex.Crim.App.1993). We overrule appellant's point of error four.

▆ In points of error five and six, appellant contends the trial court erred in overruling his motion to suppress because he was arrested without probable cause in violation of the Texas and United States Constitutions. Appellant argues that the officer did not have sufficient facts and circumstances within his knowledge and of which he had reasonably trustworthy information that would have caused him as a man of reasonable caution and prudence to believe that the appellant had committed an offense.

At appellant's hearing on his motion to suppress, Officers Mascheck and Parton testified as to their investigation as set out above in this opinion. Appellant argues that if the appellant "closely matched" the description of Ms. Lenford's attacker, why was he permitted to leave the scene after first talking to Officer Mascheck? Appellant contends that Officer Mascheck did not have sufficient facts to arrest him when he first confronted him, and even after he learned that appellant came home at 6:00 a.m. with the scratches on his face.

▆ Appellate courts should afford almost total deference to a trial court's rulings on "application of law to fact questions," also known as "mixed questions of law and fact," if the resolution of those ultimate questions turns on an evaluation of credibility and demeanor of the witnesses. *Guzman v. State*, 955 S.W.2d 85, 89 (Tex.Crim.App.1997). Appellate courts may review *de novo* "mixed questions of law and fact" not falling within this category. *Id.* We will defer to the trial court's determination of the historical facts, and decide *de novo* whether the officers had

probable cause under the totality of the circumstances to justify a warrantless arrest of appellant. *Id.* at 87–88.

▆ In order for police officers to make a warrantless arrest, the State must show the existence of probable cause at the time of the arrest and the existence of circumstances which made the procuring of a warrant impracticable. *Crane v. State*, 786 S.W.2d 338, 346 (Tex.Crim.App. 1990). The test for the existence of probable cause is "whether at that moment the facts and circumstances within the officer's knowledge and of which he had reasonably trustworthy information were sufficient to warrant a prudent man in believing that the arrested person had committed or was committing an offense." *Guzman*, 955 S.W.2d at 90 (citing *Stull v. State*, 772 S.W.2d 449, 451 (Tex.Crim.App.1989)). Because the sexual assault by appellant was reported to the police by the victim, Mae Lenford, the credibility and reliability of the informant was inherent. *Esco v. State*, 668 S.W.2d 358, 360–361(Tex.Crim.App.1982); *Nelson v. State*, 855 S.W.2d 26, 29–31 (Tex.App.-El Paso 1993, no writ).

Officer Mascheck testified that appellant closely matched the attacker's description, but he did not arrest him when he talked to appellant the first time. Officer Mascheck stated: "[N]ot having any more information I just wanted to get a good ID of him knowing where he lived and then I released him." A few minutes later, Officer Mascheck learned from Dickson that appellant was Dickson's room mate, and appellant came home about 6:00 a.m. that morning with the scratches on his face. Mascheck then felt he had enough facts to justify the detention of appellant. At this point, all of the details of the information given to the officers by the victim were corroborated by the officers. *See Whaley v. State*, 686 S.W.2d 950, 951 (Tex.Crim. App.1985); *Cornejo v. State*, 917 S.W.2d 480, 483 (Tex.app.-Houston[14th Dist.] 1996, pet. ref'd). These facts and circumstances were sufficient to warrant a pru-

dent man in believing that the suspect had committed or was committing an offense. *Cornejo,* 917 S.W.2d at 483. Mascheck knew that appellant had gone to a store a short distance away, so Mascheck and Parton went to the store and observed appellant buying beer. Mascheck went into the store and told appellant to step outside, and that he was under investigation for sexual assault. Mascheck then called Sergeant Dunn and discussed appellant's violent nature, appellant's close resemblance to the attacker, and appellant's arrival at home shortly after the assault with scratches on his face. Sergeant Dunn authorized a hold on appellant at that time, and Mascheck handcuffed appellant and took him to the police station. Before going into the police station, Mascheck stated he searched appellant again because he was going to turn appellant over to other officers for further investigation, and he did not want appellant going to jail "with drugs on him or anything else, pocket knife or anything I may have missed in my first pat down." Mascheck stated that it was part of his duties to thoroughly search a suspect before turning him over to another officer. It was during this second search that Mascheck found the crack pipe.

At appellant's hearing on his motion to suppress, appellant's counsel argued to the trial court that the officers had no probable cause to arrest appellant at the store without a warrant because they had released him earlier, had his address, and knew he was not going anywhere. The State argued that the officers initially determined that appellant closely matched the description, but did not feel they had probable cause to arrest him until they learned from Dickson that appellant came home at 6:00 a.m. with scratches on his face. Appellant lived in the same neighborhood as Ms. Lenford, and the time of his arrival at his home was very close to the time of the attack on Ms. Lenford. The State argued that it was the additional information furnished by Dickson that gave the officers probable cause to arrest appellant, and that the arrest was valid when made at the store. Because the arrest was valid, the State argued that the search and discovery of the crack pipe was valid. The trial court agreed with the State, and overruled appellant's motion to suppress the crack pipe.

Having reviewed appellant's contentions *de novo,* we find under the "totality of the circumstances" analysis, that the officers had probable cause to justify a warrantless arrest of appellant. *Guzman,* 955 S.W.2d at 91. We overrule appellants points of error five and six, and affirm the judgment of the trial court.

DON WITTIG, Justice, dissenting.

Our first question today, is whether 0.000? mg of contraband is sufficient evidence to convict appellant of knowing possession of cocaine.[1] Our courts have embarked upon a treacherous course slowly and insidiously eroding the liberty interests of its citizens. This erosion is perhaps in reaction to our sometime obsessive though too often justified fear of drugs and crime. It wasn't so long ago, to be convicted of a crime of possession of contraband, we required the substance to be a usable quantity, visible and measurable. Our courts first discarded the usable quantity standard.[2] Eventually, the visible and measurable standard too was discarded.[3] Incredibly, a Texan can now be convicted on knowing possession of cocaine, marijuana or other contraband without being able to use it, see it, or measure it! Often, as

---

1. As the majority noted, Victor was sentence to 16 years in the prison based on this evidence.

2. The usable standard was eliminated in *Cantu v. State,* 546 S.W.2d 621, 622 (Tex.Crim. App.1977).

3. *See King v. State,* 895 S.W.2d 701, 703 (Tex. Crim.App.1995); *cf. Thomas v. State,* 807 S.W.2d 786, 789 (Tex.App.—Houston [1 st Dist.] 1991, no pet.).

here, the proper charge and conviction would be possession of drug paraphernalia. There exists more than ample evidence for such a conviction. However, today's majority wants to travel yet another mile down the eroding path of proof's sufficiency. The "other evidence" of knowing possession of contraband requirement is refused.

True, *Shults* and *King* require at least the State prove other evidence demonstrates beyond a reasonable doubt the accused knowingly possessed the substance.[4] In *King*, the other evidence showed the contraband was in a crack pipe, wet with saliva.[5] Additionally, the defendant's presence was described with the time honored litany: slurred speech, incoherent, glazed eyes, staggering, swaying, and intoxication to a degree that he could harm himself.[6] We have no such evidence here. The only unusual characteristic about Victor were facial scratches. This appearance later gave rise to his arrest for a totally unrelated and unproven assault.

*Shults* involved a balloon and a trace amount of heroin in the accused's mouth.[7] Thus, only possession was proven, not the additionally required element of knowing.[8] Our case much more closely mirrors *Shults* than *King*. Our appellant was approached the second time and arrested in a corner store shopping in his own neighborhood. The arresting officer, not the complaining witness, believed Victor might have committed a sexual assault earlier that day based on his reddish complexion, and the uncorroborated statement of a

passerby. By happenstance, the passerby was the roommate of Victor who, third handedly said Victor came home with a scratched face to his nearby residence thirty-two minutes *before* the officer responded to the assault complaint. A *Terry* search some short time earlier revealed nothing and Victor was released from detention in the neighborhood. So, the officer saw Victor at least twice and did not testify to any of the *King* factors, save Victor had a glass tube, nominated a crack pipe discovered only upon the *second* more thorough arrest search.

The arresting officer testified his second search recovered a clear glass tube with some steal wool in it "and·some residue inside." This glass tube, the officer and others called a crack pipe.[9] The officer opined that in his experience the presence of residue meant that the pipe was used and there was still some residue of crack cocaine. He further testified contradictorily that the residue did *not burn* but that some of it *melts* and stays around the edge of the glass. Yet the chemist testified she did not and could not quantify this "residue" because to do so would destroy the sample. However, she knew *from experience* the weight was less than a gram! The chemist *admitted she could have weighed* the residue but did not do so. This conclusory statement by the expert that the residue is measurable is unreliable as a matter of law.

Our courts have affirmed cocaine possession cases with measured amounts as little as 0.2 milligrams, about the size of a grain of sugar.[10] However, the *Daubert*

4. *King*, 895 S.W.2d at 703; *Shults v. State*, 575 S.W.2d 29, 30 (Tex.Crim.App.1979).

5. 895 S.W.2d at 703.

6. *Id.* at 702.

7. 575 S.W.2d at 30.

8. *Id.*

9. Exhibit one admitted before the jury, the glass tube, was an open ended small piece of glass with steal wool toward one end. This "crack pipe" looks very much like a glass

tube one would use in testing for clorine or Ph in a fish tank or swimming pool. Although discolored by a smoke like substance, there is no apparent contraband visable to the naked eye. The State candidly admits at page 8 of its brief that Officer Mascheck never expressly testified that the residue (much less contraband) was visible.

10. *See Mayes v. State*, 831 S.W.2d 5, 8 (Tex. App.—Houston[1st Dist.] 1992, no pet.) (O'Connor, J. dissenting).

standard has been adopted by the Court of Criminal Appeals.[11] And *Daubert* tells us to test the scientific reliability by (1) whether the scientific theory or technique can be and has been tested; (2) whether the theory or the technique has been subjected to peer review and publication; (3) the known or potential rate of error in a particular scientific technique; and (4) general acceptance of the scientific theory or technique.[12]

I venture that eye balling a microscopic trace of cocaine in lieu of measuring hardly passes as science. Accordingly, there is no evidence of a measurable amount, or more technically insufficient evidence.[13] At some future point, the courts must come to grips with the basic scientific truth of whether a substance that has been chemically altered by fire is still the same substance. We hardly can say a log we burned in the fireplace is still a log.[14] A house burned to the ground is no longer a house. The courts may not abase liberty by creating or sustaining legal fictions to get convictions.

The *King* court held "Because the amount of cocaine was too small to be measured, this Court's language is *Shults v. State, supra*, is controlling."[15] The majority and I may agree on principle, so what facts show appellant *knew* he had the invisible and unquantified cocaine? Appellant was not staggering, no slurred speech, no wet saliva, no empty syringe and track marks, no indication of intoxication or other *King* factors. The majority confounds visible cocaine with residue. No cocaine is visible to any witness or on the pipe itself.

Unlike *Shults*, there wasn't even any white powdery substance, but like *Shults* there is insufficient evidence to sustain a conviction.[16] I would sustain appellants first point of error.

Next, I turn to point of error five concerning the trial court's denial of the motion to suppress. Because this point is dispositive, I therefore do not address the Federal Fourth Amendment problems. The majority correctly states the generally applicable standard of review and authorities. While the evidence to support probable cause to arrest without a warrant is very weak, at best, there is absolutely no evidence in the motion to suppress hearing to indicate the requirement that Victor was about to escape. To the contrary, both officers testified that a third officer from homicide who was investigating the sexual assault wanted a hold placed on this suspect. Victor was first detained at 12:40 p.m. by Officer Mascheck. The officer determined Victor's identity, home address and also learned Victor's plan to go the corner store about a block and a half away. Mascheck released Victor. When, a few minutes later, Mascheck heard of Victor's 6 a.m. arrival home (also nearby), Officer Mascheck went to the very store where Victor said he was going, and Victor was there. Victor was detained momentarily and arrested without warrant for the alleged sexual assault. His arrest was predicated not on possible escape but because the homicide officer downtown wanted a hold. The majority and I disagree on the allegation of appellant's so-called violent

11. *See Nenno v. State*, 970 S.W.2d 549, 561 (Tex.Crim.App.1998); *Kelly v. State*, 824 S.W.2d 568, 573 (Tex.Crim.App.1992).

12. *See Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579, 113 S.Ct. 2786, 125 L.Ed.2d 469 (1993); *Jordan v. State*, 928 S.W.2d 550, n. 7 (Tex.Crim.App.1996)

13. *See Merrell Dow Pharmaceuticals, Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex.1997).

14. Similarly, is an empty beer can or wine bottle in the family car sufficient to convict a minor for possession? If a passerby flicks a marijuana ash in your car, are you guilty of possession of a controlled substance?

15. 895 S.W.2d at 703.

16. Somewhere our drug laws must recognize and adhere to the ancient maxim: *de minimis non curat lex*. *Cf. United States v. Jacobsen*, 466 U.S. 109, 123–26, 104 S.Ct. 1652 (1984); *Richardson v. State*, 109 Tex.Crim. 148, 4 S.W.2d 79, 81 (App.1928).

nature. The actual testimony alluded to the violent nature of the sexual assault suspect. This could only be inferred by supposition and speculation. This speculation could only arise if indeed Victor had committed the sexual assault. No evidence was ever adduced he actually assaulted anyone. He presented totally nonviolent to the officers, and all this argumentative language boils down to the stretch to grasp probable cause for the unrelated pipe seizure. Further, when originally asked why the officer did not get a warrant he responded: "Because I didn't have a statement and that's not my— it is not part of my duties to get the warrant. It is up to the investigative unit to get the warrant." So, a man is picked off the streets, without a warrant, by an officer *not even empowered by his duties to obtain a warrant.*

The article 14.04, of the Texas Code of Criminal Procedure, requirement that the offender is about to escape is indispensable.[17] Nary a question was asked by the State, much less a scintilla of evidence suggested that Victor was about to escape. The State cites *Fry v. State.*[18] There, the accused told the robbery victim that he was packing his stuff up and leaving. The Court concluded: "The statute merely requires a showing that the officer was acting upon satisfactory proof from representations by a credible person that the felony offender 'is about to escape, so that there is no time to procure a warrant.'"[19] Here, just opposite occurred. The perpetrator of the alleged sexual assault told his victim *he would be back.*

The majority and State cite *Anderson v. State.*[20] In *Anderson,* appellant was not arrested until after being presented before witnesses who made a positive identifica-

tion. The appellant had pushed a grocery cart with a styrofoam ice chest containing the body of a five-year-old girl. This hot pursuit case, where the identification is made in the perpetrator's presence, conveyed to him the authorities' awareness of his involvement according to the court.[21] Contrasting our facts, Victor had already been released once and good to his word went to the local corner grocer. While *Anderson* discusses in part the *perpetrator's* awareness, the required proof is still either the officer's observations or the observations of some credible person communicated to the *officer.* The factors must include both that the offender is about to escape and the officer is without time to procure a warrant.[22]

Nowhere in our record exists such a conclusion, opinion or indication whatsoever made by the arresting officer or his companion. The only stated reason for the second stop was to arrest for the unrelated sexual assault and to detain for investigation of the same offense. Further, the majority's use of the word "pursued" is misleading. Victor earlier walked near a car stopped by police when Officer Mascheck noted Victor's presence and questioned him the first time. Twenty minutes later, Officer Mascheck went the block or two to the grocery store-hardly a pursuit-at least not in the *Anderson* sense. While the State in its brief suggests at page 25 that Victor "might have decided he needed to leave the neighborhood for a while," no evidence is referenced for such an assertion.

*Because credibility of the witnesses and the underlying facts are not here at issue*

---

17. *Honeycutt v. State,* 499 S.W.2d 662, 665 (Tex.Crim.App.1973).

18. 639 S.W.2d 463, 476 (Tex.Crim.App.1982).

19. *Id.*

20. 932 S.W.2d 502, 506 (Tex.Crim.App.1996).

21. *Id.*

22. *Id.* (citing *West v. State,* 720 S.W.2d 511, 517–518 (Tex.Crim.App.1986)). The implicit term "observation", I make explicit for clarification. Perhaps it should be "observation or circumstance" to cover both direct and circumstantial evidence.

at least on the escape issue, the majority's reliance on *Romero* is misplaced.[23]

The motion to suppress was erroneously denied. Therefore, I would sustain appellant's fifth point of error. I concur with the majority on points of error two, three and four.