COURT
OF APPEALS
SECOND
DISTRICT OF TEXAS
FORT WORTH
NO.
2-02-304-CR
 
LARRY LEE BUTLER                                                                        
APPELLANT
V.
THE STATE OF TEXAS    
                                                               
STATE
------------
FROM THE 297TH DISTRICT COURT OF
TARRANT COUNTY
------------
MEMORANDUM
OPINION(1)
------------
Larry Lee Butler appeals from his conviction for aggravated robbery with a
deadly weapon. On appeal, he contends that: (1) the evidence was legally and
factually insufficient to show that he used or exhibited a deadly weapon, (2)
the evidence was legally insufficient to show that he committed theft, and (3)
his trial counsel was ineffective because he failed to timely assert a Batson(2)
challenge. We will affirm.
Factual Background
On December 15, 2001, appellant entered the 18 Hour Food Mart, where he was a
regular customer who usually only bought beer. Both of the owners, James Kim and
Chiahao Shen, were working that evening. Appellant picked up a beer, then asked
the price of a package of Corn Nuts. After being told the price, appellant
placed the beer on the counter. Kim asked appellant if he had anything else,
appellant said no, and Kim gave appellant change for the purchase of the beer.
Shen saw a package of Corn Nuts in appellant's coat pocket as appellant
started to leave the store. Shen told Kim, in Chinese, that appellant was trying
to leave the store without paying for the Corn Nuts. Shen then moved to block
appellant's exit by standing between appellant and the front door, and Kim
called 911 to report the incident. While Kim was talking to the 911 operator,
appellant pulled a knife on Shen, threatened Shen, and pushed Shen from the
front door to the lottery table. During the struggle, a package of Corn Nuts
fell from appellant's pocket. While still brandishing the knife, appellant
grabbed another package of Corn Nuts and left the store, returned briefly and
threatened Kim and Shen, then left again. When he was arrested a short time
later near the store, he had a beer in one hand, a package of Corn Nuts in the
other, and a knife in his back pants pocket.
Sufficiency of the Evidence
 

 Standard of Review

In his first two points, appellant challenges both the legal and factual
sufficiency of the evidence. In reviewing the legal sufficiency of the evidence
to support a conviction, we view all the evidence in the light most favorable to
the verdict in order to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Jackson
v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); Burden v.
State, 55 S.W.3d 608, 612 (Tex. Crim. App. 2001). This standard gives full
play to the responsibility of the trier of fact to resolve conflicts in the
testimony, to weigh the evidence, and to draw reasonable inferences from basic
facts to ultimate facts. Jackson, 443 U.S. at 319, 99 S. Ct. at 2789.
When performing a legal sufficiency review, we may not sit as a thirteenth
juror, re-evaluating the weight and credibility of the evidence and, thus,
substituting our judgment for that of the fact finder. Dewberry v. State,
4 S.W.3d 735, 740 (Tex. Crim. App. 1999), cert. denied, 529 U.S. 1131
(2000).
In reviewing the factual sufficiency of the evidence to support a conviction,
we are to view all the evidence in a neutral light, favoring neither party. Johnson
v. State, 23 S.W.3d 1, 7 (Tex. Crim. App. 2000); Clewis v. State,
922 S.W.2d 126, 129, 134 (Tex. Crim. App. 1996). Evidence is factually
insufficient if it is so weak as to be clearly wrong and manifestly unjust or
the adverse finding is against the great weight and preponderance of the
available evidence. Johnson, 23 S.W.3d at 11. Therefore, we must
determine whether a neutral review of all the evidence, both for and against the
finding, demonstrates that the proof of guilt is so obviously weak as to
undermine confidence in the verdict, or the proof of guilt, although adequate if
taken alone, is greatly outweighed by contrary proof. Id. In performing
this review, we are to give due deference to the fact finder's determinations. Id.
at 8-9; Clewis, 922 S.W.2d at 136. We may not substitute our judgment
for that of the fact finder's. Johnson, 23 S.W.3d at 12. Consequently,
we may find the evidence factually insufficient only where necessary to prevent
manifest injustice. Johnson, 23 S.W.3d at 9, 12; Cain v. State,
958 S.W.2d 404, 407 (Tex. Crim. App. 1997).
To make a determination of factual insufficiency, a complete and detailed
examination of all the relevant evidence is required. Johnson, 23
S.W.3d at 12. A proper factual sufficiency review must include a discussion of
the most important and relevant evidence that supports the appellant's complaint
on appeal. Sims v. State, 99 S.W.3d 600, 603 (Tex. Crim. App. 2003).

 Deadly weapon

A person commits aggravated robbery if he uses or exhibits a deadly weapon
during the course of a theft and intentionally or knowingly threatens or places
another in fear of imminent bodily injury or death. Tex. Penal Code Ann. §§
29.02(a)(2), 29.03(a)(2) (Vernon 2003). In his first point, appellant asserts
that the evidence is legally and factually insufficient to show that the knife
he used during the alleged robbery was a deadly weapon.
A deadly weapon is defined as "(A) a firearm or anything manifestly
designed, made, or adapted for the purpose of inflicting death or serious bodily
injury; or (B) anything that in the manner of its use or intended use is capable
of causing death or serious bodily injury." Tex. Penal Code Ann. §
1.07(a)(17). Generally, a knife is not a deadly weapon by design. Thomas v.
State, 821 S.W.2d 616, 620 (Tex. Crim. App. 1991). A knife can be a deadly
weapon, however, if in the manner of its use or intended use it was capable of
causing death or serious bodily injury. McCain v. State, 22 S.W.3d 497,
503 (Tex. Crim. App. 2000); Brown v. State, 716 S.W.2d 939, 946 (Tex.
Crim. App. 1986). To determine whether a knife is a deadly weapon in the manner
of its use or intended use, we consider the size, shape, and sharpness of the
knife; the manner of its use or intended use; its capacity to produce death or
serious bodily injury; and testimony concerning the knife's life-threatening
capabilities. Brown, 716 S.W.2d at 946; Nickerson v. State, 69
S.W.3d 661, 670 (Tex. App.--Waco 2002, pet. ref'd). Wounds need not be inflicted
before a knife can be determined to be a deadly weapon. Brown, 716
S.W.2d at 946. Each case is examined on its own facts to determine whether the
jury could have concluded from the surrounding circumstances that the knife was
used or intended to be used as a deadly weapon. Wade v. State, 951
S.W.2d 886, 892 (Tex. App.--Waco 1997, pet. ref'd). These surrounding
circumstances can include a defendant's verbal threats, the distance between the
defendant and the victim, and the witness's description of the knife. Id.
The State admitted the knife into evidence. Both Kim and Shen testified that
appellant used the knife as a deadly weapon. Both testified that appellant
wielded the knife very close to Shen and demonstrated for the jury how appellant
used the knife. Kim testified that appellant used the knife to threaten Shen,
holding the knife close to Shen's stomach. Shen testified that the appellant
used a sharp, serated knife and that he feared he would "probably
die." Two of the investigating police officers testified that in their
opinions the knife was capable of causing death or serious bodily injury. We
hold that this evidence is both legally and factually sufficient to support the
jury's deadly weapon finding and overrule appellant's first point.

 Theft

A person commits theft if, without the effective consent of the owner, he
unlawfully appropriates property with the intent to deprive the owner of the
property. Tex. Penal Code Ann. § 31.03(a) (Vernon 2003). In his second point,
appellant asserts that the evidence is legally insufficient to show that he
committed a theft because he claims that Kim and Shen were mistaken when they
assumed that appellant was stealing the Corn Nuts.
Kim testified that neither he nor Shen gave appellant permission to take
either the first or second package of Corn Nuts. Kim testified that he asked
appellant at least twice if he had anything to purchase other than the beer, and
appellant said no. Shen saw the Corn Nuts in appellant's pocket and appellant
tried to leave the store with the Corn Nuts in his pocket without paying for
them. After the first package of Corn Nuts fell from his pocket, appellant
grabbed a second package, while he still held the knife, then left the store. We
hold this evidence is legally sufficient to show that appellant committed theft.
We overrule appellant's second point.
Ineffective assistance of counsel
 

 Standard of review

In his third point, appellant asserts that his trial counsel was ineffective
because his Batson challenge was untimely. We apply a two-pronged test
to ineffective assistance of counsel claims. Strickland v. Washington,
466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); Thompson v. State, 9
S.W.3d 808, 812 (Tex. Crim. App. 1999). First, appellant must show that his
counsel's performance was deficient; second, appellant must show the deficient
performance prejudiced the defense. Strickland, 466 U.S. at 687, 104 S.
Ct. at 2064.
In evaluating the effectiveness of counsel under the first prong, we look to
the totality of the representation and the particular circumstances of each
case. Thompson, 9 S.W.3d at 813. The issue is whether counsel's
assistance was reasonable under all the circumstances and prevailing
professional norms at the time of the alleged error. Strickland, 466
U.S. at 688-89, 104 S. Ct. at 2065. "[C]ounsel is strongly presumed to have
rendered adequate assistance and made all significant decisions in the exercise
of reasonable professional judgment." Id. at 690, 104 S. Ct. at
2066. An allegation of ineffective assistance must be firmly founded in the
record, and the record must affirmatively demonstrate the alleged
ineffectiveness. Thompson, 9 S.W.3d at 814. Our scrutiny of counsel's
performance must be highly deferential, and every effort must be made to
eliminate the distorting effects of hindsight. Strickland, 466 U.S. at
689, 104 S. Ct. at 2065.
The second prong of Strickland requires a showing that counsel's
errors were so serious that they deprived the defendant of a fair trial, i.e., a
trial whose result is reliable. Id. at 687, 104 S. Ct. at 2064. In
other words, appellant must show there is a reasonable probability that, but for
counsel's unprofessional errors, the result of the proceeding would have been
different. Id. at 694, 104 S. Ct. at 2068. A reasonable probability is
a probability sufficient to undermine confidence in the outcome. Id.
The ultimate focus of our inquiry must be on the fundamental fairness of the
proceeding whose result is being challenged. Id. at 697, 104 S. Ct. at
2070.

 The Batson challenge

After the jury was sworn and immediately before the trial on the merits
began, appellant's attorney objected to the State's peremptory strikes of three
black female venirepersons, claiming there were no race-neutral reasons for the
strikes. Those venirepersons were seated as venirepersons two, six, and
fourteen. Appellant's attorney acknowledged that the Batson challenge
was untimely and confessed error. Nevertheless, the trial court allowed the
State to respond to the objection. The prosecutor explained that the State
struck the three venirepersons because they indicated on their juror
questionnaires that they considered the primary goal of the criminal justice
system in considering punishment for a person convicted of a crime to be
rehabilitation. The State also struck a Hispanic female and a white male for the
same reason. (3) The juror questionnaires of
those five venirepersons and the State's attorney notes from the voir dire
hearing were admitted into evidence. Appellant's attorney responded by arguing
that the State's reason was not race neutral because probation was not available
to appellant if he were to be convicted; thus, he claimed rehabilitation was not
an issue in the case. The trial court denied the Batson challenge on
the basis that it was untimely.
At the hearing on appellant's motion for new trial, appellant's trial
attorney testified that his legal representation was deficient because he failed
to assert the Batson challenge timely. Appellant testified that he
failed to notice that the State had struck all potential black jurors until it
was too late: "I hadn't had a jury in years where all the blacks were
struck and it caught me by surprise." The trial court denied the motion for
new trial and, when asked for clarification on the Batson issue,
explained that the court had no option but to deny the Batson challenge
because it was untimely.

 Discussion

Trial counsel's performance was deficient because he did not raise the Batson
challenge timely. Batiste v. State, 834 S.W.2d 460, 466 (Tex.
App.--Houston [14th Dist.] 1992), aff'd, 888 S.W.2d 9 (Tex.
Crim. App. 1994); Williams v. State, 834 S.W.2d 85, 87 (Tex.
App.--Houston [14th Dist.] 1992, pet. ref'd). For this objection to
be timely, it must be raised after the parties delivered their lists of strikes
and before the court impanelled the jury. Tex. Code Crim. Proc. Ann. art. 35.261
(Vernon 1989); Cooper v. State, 791 S.W.2d 80, 83 (Tex. Crim. App.
1990). The jury is considered impanelled when the members of the jury have been
selected and sworn. Price v. State, 782 S.W.2d 266, 269 (Tex.
App.--Beaumont 1989, pet. ref'd).
Nevertheless, appellant has not shown a reasonable probability that a
different result would have occurred but for his trial counsel's ineffective
assistance. Appellant's only argument concerning prejudice is that "[t]here
were no African-American jurors permitted to be on the jury who could hear the
testimony and weigh and evaluate that testimony from their personal and social
point of view." The ethnic stereotyping implied in appellant's argument
flies in the face of Batson's basic premise that the Fourteenth
Amendment tolerates no assumption about juror competence or impartiality, or the
lack thereof, on account of race. See Batiste v. State, 888 S.W.2d 9,
16 (Tex. Crim. App. 1994).
The record contains no evidence concerning the racial composition of the
final jury panel, venirepersons who were targets of peremptory challenges, or
the original venire and is thus inadequate for us to review appellant's Batson
complaint. See Hermosillo v. State, 903 S.W.2d 60, 66 (Tex. App.--Fort
Worth 1995, pet. ref'd). Nor is there any evidence in the record that as a
result of the untimely Batson challenge appellant was forced to accept
an objectionable juror or that the jury was incapable of providing the impartial
tribunal necessary to ensure proper functioning of the adversarial process. See
Batiste, 888 S.W.2d at 17.
Furthermore, appellant's trial counsel did about all that could be expected
concerning the evidence against appellant. Both of the victims testified that
appellant concealed the Corn Nuts, attempted to leave the store without paying
for them, and assaulted them with a knife when he was confronted about the
attempted theft. Appellant was captured on the store's surveillance videotape,
and police captured appellant minutes after appellant left the store. Appellant
had both the Corn Nuts and knife on his body when he was arrested.
The facts demonstrate that appellant has failed to meet the second prong of
the Strickland test. We overrule point three.
Conclusion
Having overruled all three of appellant's points, we affirm
the trial court's judgment.
 
                                                                       
PER CURIAM
 
PANEL F: GARDNER, DAY and LIVINGSTON, JJ.
DO NOT PUBLISH
Tex. R. App. P. 47.2(b)
DELIVERED: August 21, 2003

1. See Tex. R. App. P. 47.4.
2. See Batson v. Kentucky, 476 U.S. 79, 106 S.
Ct. 1712 (1986).
3. Striking a venireperson who believes the primary
purpose of criminal justice is rehabilitation is a valid race-neutral reason. Victor
v. State, 995 S.W.2d 216, 222 (Tex. App.--Houston [14th Dist.]
1999, pet. ref'd); Hatchett v. State, 930 S.W.2d 844, 847 (Tex.
App.--Houston [14th Dist.] 1996, pet. ref'd).