**Opinion issued November 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

**NO. 01-14-00901-CR**

———————————

**TRAVIS LAMB, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1394200**

**MEMORANDUM OPINION**

The State of Texas charged Appellant, Travis Lamb, by indictment with

possession of cocaine, more than one gram and less than four grams.[1]  Lamb

pleaded not guilty.  The jury found him guilty.  Pursuant to an agreement between

---

[1]  *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), .115(a), (c) (Vernon
2010).

Appellant and the State, the trial court assessed punishment at 35 years' confinement. In one issue on appeal, Appellant argues the evidence was insufficient to establish that he knowingly possessed more than a trace amount of cocaine.

We affirm.

### Background

Officers R. Perez and F. Gallegos, officers with the Houston Police department, were on patrol on the night of July 10, 2013. They observed Appellant driving his car and turning without signaling. The officers performed a traffic stop. During the course of the stop, Appellant admitted he had been driving without a license. The officers arrested Appellant. Officer Gallegos performed an inventory of the car in preparation for a tow truck to take the car.

During the inventory, Officer Gallegos found a clear plastic bag containing a crystalline substance. The baggie had been in an open compartment on the driver's door. The officers discussed between themselves whether the substance might be methamphetamine. Appellant heard their conversation and said, "It's not meth. It's bath salts." Officer Gallegos field-tested the substance. The field test identified the substance as methamphetamine.

The State charged Appellant with possession of methamphetamine. Later, a forensic examiner, A. Noyola, determined that the substance in the baggie

contained cocaine.  Noyola measured the weight of the substance at 1.77 grams. The State modified the indictment to charge Appellant with possession of cocaine.

At trial, Noyola described the process for testing the substance.  She explained that the types of tests she performs are either presumptive or confirmatory.  Presumptive tests do not confirm the identity of the substance, but indicate what substances could be present.  A confirmatory test, as its name suggests, confirms all the compounds present in the substance.

Noyola testified that all of the presumptive tests she performed at the beginning (including chemical screening and ultraviolet spectrophotometry) were negative, meaning no drugs were identified.  Noyola then moved on to confirmatory tests.  One test, Fourier transform infrared spectroscopy, could not produce an acceptable match.  Another, gas chromatography mass spectrometry, came out negative.  Noyola ran this last test a second time with a greater concentration of the sample.  This time, the test identified cocaine in the sample. Finally, Noyola ran another presumptive test, which was only identified as TLC. This presumptive test also identified the presence of cocaine.  Neither of the positive tests identified the amount or concentration of cocaine within the sample.

## Sufficiency of the Evidence

In his sole issue on appeal, Appellant argues the evidence was insufficient to establish that he knowingly possessed more than a trace amount of cocaine.

## A. Standard of Review

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.     Analysis**

Appellant was ultimately charged with possession of cocaine, more than one gram but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), .115(a), (c) (Vernon 2010). "[A] person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional

5

practice." *Id.* § 481.115(a). Cocaine is listed in Penalty Group 1. *Id.* § 481.102(3)(D). The offense is a third degree felony "if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, one gram or more but less than four grams." *Id.* § 481.115(c). Appellant argues in his issue on appeal that the evidence was insufficient to show that he knowingly possessed cocaine and to show that the amount of cocaine was greater than a trace amount.

For knowingly possessing a controlled substance, "[i]f the controlled substance can be seen and measured, the amount is sufficient to establish the defendant knew it was a controlled substance." *Victor v. State*, 995 S.W.2d 216, 220 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). In contrast, "[w]hen the quantity of a substance possessed is so small that it cannot be quantitatively measured, there must be evidence other than its mere possession to prove that the defendant knew the substance in his possession was a controlled substance." *Shults v. State*, 575 S.W.2d 29, 30 (Tex. Crim. App. 1979). Our disposition, then, of Appellant's argument that the record indicates he did not possess more than a trace amount of cocaine influences our determination of whether he knowingly possessed cocaine. Accordingly, we first address Appellant's argument that he only possessed a trace amount of cocaine.

One of Appellant's arguments challenging the weight of the cocaine is his claim that Noyola failed to establish the amount or concentration of cocaine in the substance. The State correctly argues it did not carry any burden to show this.

> Under the new Health and Safety Code definition, the State is no longer required to determine the amount of controlled substance *and* the amount of adulterant and dilutant that constitute the mixture. The State has to prove only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight.

*Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2005); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (making possession third degree felony "if the amount of the controlled substance possessed is, *by aggregate weight, including adulterants or dilutants*, one gram or more but less than four grams" (emphasis added)), § 481.002(49) (Vernon 2010) (defining "adulterant or dilutant" as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance").

Appellant further argues that Noyola failed to provide any "foundational knowledge" for the jury to determine that the substance contained cocaine because she did not provide the data from the tests that identified cocaine within the substance. Noyola testified that the substance contained cocaine, and the trial court admitted a one-page report indicating the same. To the degree that he is arguing that this evidence should not have been admitted due to this alleged

7

deficiency, Appellant did not object to Noyola's testimony or to the admission of the report.

To preserve error regarding the admission of evidence, a party must make a specific and timely objection. TEX. R. APP. P. 33.1(a)(1); *Penry v. State*, 903 S.W.2d 715, 763 (Tex. Crim. App. 1995). This is as true of alleged unreliability of expert testimony as it is of other evidentiary issues. *See, e.g.*, *Stephens v. State,* 276 S.W.3d 148, 153 (Tex. App.—Amarillo 2008, pet. ref'd) (holding appellant did not preserve error when he neither objected to expert's testimony at trial nor requested a *Daubert* hearing).

Next, Appellant argues that Noyola's testimony about the multiple tests on the substance show that the amount of cocaine in the substance was only a trace amount. When she could not get an identification of any drug in the substance on the presumptive tests, Noyola began performing determinative tests. One determinative test was indeterminative. The second was negative. It was not until Noyola concentrated the sample and ran the second test again that she was able to obtain any determination of a controlled substance, cocaine. She then ran a final presumptive test and also received an identification of cocaine. Appellant argues that the need to run multiple tests and, then, to ultimately concentrate the sample before any reading of cocaine could be achieved establishes that the 1.77 grams of

8

the substance found in Appellant's car could not have been more than a trace amount.

Even accepting the merits of Appellant's reasoning, he cannot prevail. Regardless of the amount of cocaine present in the substance, it was present, and it was mixed with "adulterants and dilutants." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (defining "adulterants and dilutants"). Regardless of whether the amount of cocaine by itself would have constituted a trace amount, with the adulterants and dilutants, it was visible and weighed 1.77 grams. *See Melton*, 120 S.W.3d at 344 (holding State has to prove only that aggregate weight of controlled substance mixture, including adulterants and dilutants, equals alleged minimum weight). Accordingly, there was sufficient evidence for the jury to determine that Appellant possessed more than one gram and less than four grams of cocaine. *See id.* This is not a trace amount. *See Shults*, 575 S.W.2d at 30 (defining trace amount to be quantity of *substance* possessed so small that it cannot be quantitatively measured).

Appellant argues that Noyola failed to "identify which 'adulterants and diluatants' were contained within the crystalline substance." This was not necessary information, however. The Texas Legislature defined "adulterants and dilutants" to be "*any material* that increases the bulk or quantity of a controlled substance, *regardless of its effect on the chemical activity of the controlled*

*substance*." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (emphasis added).

This encompasses blood waste from a failed attempt to inject methamphetamine.

*Seals v. State*, 187 S.W.3d 417, 418, 422 (Tex. Crim. App. 2005). This is true

even though the presence of blood would make the drug toxic if injected into the

body. *Id.* at 427 (Cochran, J., dissenting).

Anticipating this outcome, Appellant further argues, "The rules set forth in

[two Court of Criminal Appeals cases] regarding trace amounts of controlled

substances, even those invisible to the human eye, and the rule set forth in *Seals*,

transforming pretty much any substance mixed with a controlled substance into an

'adulterant or dilutant,' make felons of the innocent."[2] As Appellant's argument

establishes, however, the Court of Criminal Appeals has already ruled on the

matters he raises. As an intermediate court of appeals, we are bound to follow the

precedent of the Texas Court of Criminal Appeals. *Gonzales v. State*, 190 S.W.3d

125, 130 n.1 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); TEX. CONST.

art. V., § 5(a) (providing that Court of Criminal Appeals is final authority for

---

[2] In his reply brief, Appellant argues that due process requirements put limits on what constitutes an adulterant or dilutant and on the quality of evidence that will support a conviction for possession of a controlled substance. Appellant's due process arguments were not raised in his primary brief. An appellant cannot raise issues raised for the first time in a reply brief. *See* TEX. R. APP. P. 38.3 (limiting reply brief to addressing matters raised in appellee's brief); *Barrios v. State*, 27 S.W.3d 313, 322 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (rejecting review of argument raised for first time in reply brief).

interpreting criminal law in Texas). Appellant's argument is outside the scope of our review.

We turn now to the question of whether there was sufficient evidence to show that he knowingly possessed cocaine. Appellant does not challenge the sufficiency of the determination that he possessed the substance. Instead, he disputes that there was sufficient evidence to establish that he knew it was cocaine. We have held that the evidence was sufficient to establish that the substance found in Appellant's car contained cocaine, was visible, and weighed more than one gram. Because the substance contained cocaine and can be seen and measured, "the amount is sufficient to establish the defendant knew it was a controlled substance." *Victor*, 995 S.W.2d at 220.

Appellant points out his statement to the officers after they found the bag with the controlled substance. While the officers were discussing between themselves what type of controlled substance the bag might contain, Appellant volunteered, "It's not meth. It's bath salts." Appellant asserts that this statement establishes that he did not know the substance was cocaine. The State argues that it was not required to prove that he knew the substance was cocaine, only that he knew the substance was a controlled substance.[3] We do not need to resolve either

---

[3] *But see King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). ("Therefore, the State must prove, through other evidence, that appellant had knowledge that the substance in his possession was cocaine.").

11

of these arguments, however. While it is undisputed that Appellant made this statement, there was no requirement for the jury to conclude that this statement was honest and credit it. "With respect to testimony of witnesses, the jury is the sole judge of the credibility and weight to be attached thereto, and when the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). Appellant argues elsewhere in his brief, "There is no guarantee that a person possessing . . . 'bath salts,' recreational drugs created specifically to skirt the law as it existed at the time of the chemical's creation, possesses a prohibited substance." A jury could have reasonably determined that Appellant's statement was designed to take advantage of any ambiguity on the legality of what he claimed the substance to be.[4] Because this determination would support the jury's verdict, we must defer to that determination. *See id.*

We hold that, because the amount of cocaine was visible and measureable, the evidence is sufficient to support the jury's determination that Appellant knew the substance was cocaine. *See Victor*, 995 S.W.2d at 220.

---

[4] Appellant argues, "There is no record-based or evidence-based reason to disbelieve [Appellant]'s assertion that he thought the drugs were 'bath salts.'" There is no reason to believe the assertion, either. Credibility determinations are left to the jury and are not subject to sufficiency-of-the-evidence reviews. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014).

We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

                                                    Laura Carter Higley
                                                    Justice

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).