PD-1650-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 12/18/2015 3:03:54 PM
Accepted 12/19/2015 11:03:47 AM
ABEL ACOSTA
CLERK

No. _____

**IN THE COURT OF CRIMINAL APPEALS OF TEXAS**

**TRAVIS LAMB**
*Appellant*

v.

**THE STATE OF TEXAS**
*Appellee*

On Petition for Discretionary Review from
Cause No. 01-14-00901-CR, affirming the conviction in
Cause No. 1394200, in the 351st Judicial District Court of Harris County, Texas

**PETITION FOR DISCRETIONARY REVIEW**

**Oral Argument Requested**

FILED IN
COURT OF CRIMINAL APPEALS

December 18, 2015

ABEL ACOSTA, CLERK

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**NICOLAS HUGHES**
Assistant Public Defender
Harris County, Texas
TBN: 24059981
1201 Franklin St., 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax:    (713) 437-4316
nicolas.hughes@pdo.hctx.net

**ATTORNEY FOR APPELLANT**

## IDENTITY OF PARTIES AND ATTORNEYS

APPELLANT:                          TRAVIS LAMB


TRIAL PROSECUTOR:                   KRISTIN ASSAAD
                                    Assistant District Attorney
                                    JOSEPH ALLARD
                                    Assistant District Attorney
                                    Harris County, Texas
                                    1201 Franklin Street, 6th Floor
                                    Houston, Texas 77002


ATTORNEY AT TRIAL:                  KEITH LARSON
                                    Attorney at Law
                                    2855 Mangum Road, Suite A-559
                                    Houston, Texas 77092-7493


JUDGE AT TRIAL:                     HON. MARK KENT ELLIS
                                    351st District Court
                                    Harris County, Texas
                                    1201 Franklin Street, 14th floor
                                    Houston, Texas 77002


ATTORNEY ON APPEAL:                 NICOLAS HUGHES
                                    Assistant Public Defender
                                    Harris County, Texas
                                    1201 Franklin St., 13th Floor
                                    Houston, Texas 77002


PROSECUTOR ON APPEAL:               MELISSA HERVEY
                                    Assistant District Attorney
                                    Harris County, Texas
                                    1201 Franklin Street, 6th Floor
                                    Houston, Texas 77002

# TABLE OF CONTENTS

IDENTITY OF PARTIES AND ATTORNEYS ................................................................................. ii

TABLE OF CONTENTS ............................................................................................................ iii

INDEX OF AUTHORITIES ........................................................................................................ vi

STATEMENT REGARDING ORAL ARGUMENT ........................................................................ 1

STATEMENT OF THE CASE ..................................................................................................... 1

STATEMENT OF PROCEDURAL HISTORY ............................................................................... 2

GROUNDS FOR REVIEW ......................................................................................................... 2

REASONS FOR REVIEW .......................................................................................................... 3

    1. The Court of Appeals had decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals ........................... 3

    2. The Court of Appeals has decided an important question of state law in a way that conflicts with Court of Criminal Appeals precedent ............................................ 3

ARGUMENT ............................................................................................................................ 4

    I. The Court of Appeals erred by holding that conclusory expert testimony was sufficient to support Appellant's conviction, in contravention of the rule that "an expert's simple ipse dixit is insufficient to establish a matter" *Coble v. State*, 330 S.W.3d 253, 277 n. 62 (Tex. Crim. App. 2010) ............................................................. 4

        A. Due process imposes minimum standards the testimony required to support a conviction for possession of a controlled substance ........................................... 4

        B. Measuring the quality of expert testimony in a criminal case ........................... 5

        C. An expert's bare conclusions or *ipse dixit* are insufficient to establish a fact of consequence in a criminal case ................................................................................. 6

        D. In Appellant's case, the expert testimony and laboratory report were conclusory and insufficient to support a conviction for possession of a controlled substance ............................................................................................................ 7

1. The laboratory report has no evidentiary value.............................................. 7

2. The analyst's testimony that the analysis of the crystalline substance indicated the crystalline substance "contains cocaine" is insufficient to support Appellant's conviction ........................................................................ 8

3. Taken together, the laboratory report and the expert testimony are insufficient to prove that the crystalline substance "contains cocaine" ....... 12

II. The Court of Appeals erred by holding that Appellant's mere possession of a crystalline substance Appellant claimed to be "bath salts" was sufficient to uphold a conviction for a nearly undetectable amount of cocaine, in contravention in the rule set forth in *King v. State*, 895 S.W.2d 701 (Tex. Crim. App. 1995) .................... 13

A. The visible presence of "adulterants or dilutants" does not establish that a defendant possessed anything more than a trace amount of a controlled substance .......................................................................................................... 13

1. The Court of Appeals included the weight of adulterants and dilutants when determining whether there was a trace amount of cocaine present in Appellant's case ...................................................................................... 13

2. The Court of Appeals's reasoning is circular, dangerous, and should be rejected ........................................................................................................ 14

B. There is no testimony that established that Appellant knew or should have known the crystalline substance contained cocaine.............................................. 16

1. The testimony regarding the apparent form of the crystalline substance 16

2. There was no testimony that any person in Appellant's shoes would have suspected there to be cocaine present in the crystalline substance............... 17

3. There is no other circumstantial evidence which would connect Appellant to the nearly undetectable amount of cocaine in this case............................ 19

PRAYER .......................................................................................................... 20

CERTIFICATE OF SERVICE.................................................................................. 21

CERTIFICATE OF COMPLIANCE ........................................................................... 21

APPENDIX ....................................................................................................................... 22

# INDEX OF AUTHORITIES

**Federal Cases**

*Illinois v. Gates*, 462 U.S. 213 (1983) .................................................................................... 7

*Jackson v. Virginia*, 443 U.S. 307 (1979) .......................................................................... 4, 19

*Nationwide Mut. Ins. Co. v. Darden*, 503 U.S. 318 (1992) .................................................... 15

**State Cases**

*Brooks v. State*, 323 S.W.3d 893 (Tex. Crim. App. 2010) .................................................. 5, 6

*Burrow v. Arce*, 997 S.W.2d 229 (Tex.1999) ....................................................................... 7

*Coble v. State*, 330 S.W.3d 253 (Tex. Crim. App. 2010)............................................. 2, 3, 6, 7

*Curtis v. State*, 548 S.W.2d 57 (Tex. Crim. App. 1977)...................................................... 4, 11

*Earle v. Ratliff*, 998 S.W.2d 882 (Tex.1999) ....................................................................... 7

*Ex Parte Harleston*, 431 S.W.3d 67 (Tex. Crim. App. 2014) .................................................. 5

*Frierson v. State*, 839 S.W.2d 841 (Tex. App.—Dallas 1992, pet. ref'd).......................... 18

*Hamilton v. Wilson*, 249 S.W.3d 425 (Tex. 2008).................................................................. 7

*Hensley v. State*, No. 02–13–00190–CR, 2014 WL 1999307 (Tex. App.−Fort Worth May 15, 2014, no pet.)(mem. op., not designated for publication)........................ 6, 11

*Jelinek v. Casas*, 328 S.W.3d 526 (Tex. 2010) ............................................................. 6, 7, 19

*Joseph v. State*, 897 S.W.2d 374 (Tex. Crim. App. 1995).................................................... 20

*King v. State*, 895 S.W.2d 701 (Tex. Crim. App. 1995)........................................... 3, 13, 20

*Kirsch v. State*, 306 S.W.3d 738 (Tex. Crim. App. 2010)....................................................... 5

*Lamb v. State*, 01-14-00901-CR, 2015 WL 6933120 (Tex. App.−Houston [1st Dist.] Nov. 10, 2015) (mem. op., not designated for publication) ....................... 3, 14, 16, 18

*Menges v. State,* 9 S.W. 49 (Tex. Ct. App. 1888) ............................................................... 19

*N.N. v. Inst. for Rehab. & Research*, 234 S.W.3d 1 (Tex. App.-Houston [1st Dist.] 2006) *withdrawn by* No. 01-02-01101-CV, 2007 WL 4279613 (Tex. App.-Houston [1st Dist.] Dec. 5, 2007) .................................................................................................... 5

*Seals v. State*, 187 S.W.3d 417 (Tex. Crim. App. 2005) ...................................................... 15

*Shelby v. State*, 819 S.W.2d 544 (Tex. Crim. App. 1991) ....................................................... 4

*Shults v. State*, 575 S.W.2d 29 (Tex. Crim. App. 1979) ................................................. 19, 20

*State v. Cunningham*, 108 N.C. App. 185 (1992) ................................................................... 8

**State Statutes**

TEX. HEALTH & SAFETY CODE ANN. § 481.002 (West 2011) ................................... 14, 15

TEX. HEALTH & SAFETY CODE ANN. § 481.115 (West 2011) ................................... 14, 15

TEX. PENAL CODE ANN. § 6.04 (West 2011) ................................................................... 18

**State Rules**

TEX. R. APP. P. R. 66.3 ...................................................................................................... 3, 4

**Treatises**

*Edward J. Fitzgerald*, INTOXICATION TEST EVIDENCE § 68:16 (2d. ed.) ............................ 8

**Other Authorities**

54 AM. JUR. PROOF OF FACTS 3d 381 (1999) ..................................................................... 5

Christian G. Daughton, *Illicit Drugs: Contaminants in the Environment and Utility in Forensic Epidemiology*, 210 REV. OF ENVIRON. CONTAMINATION AND TOXICOLOGY 59 (2011) .................................................................................................................................... 16

Edward J. Cone & William W. Weddington, Jr. *Prolonged Occurrence of Cocaine In Human Saliva and Urine after Chronic Use*, 13 J. ANALYTICAL TOXICOLOGY 65 (1989) ............ 16

Jeffrey C. Grass, *Mcfadden v. United States: Deconstructing Synthetic Drug Prosecutions*, CHAMPION 34 (2015) ...................................................................................................... 18

Maria João Valente et. al, *Chromatographic Methodologies for Analysis of Cocaine and Its Metabolites in Biological Matrices*, InTech (2012) *available at* http://cdn.intechopen.com/pdfs-wm/31530.pdf ........................................................ 10

*Photo 9 – Thin Layer Chromatography*, Iowa Dep't of Public Safety (2006) *available at* http://www.dps.state.ia.us/DCI/lab/drugidentification/tlc.shtml ........................... 12

S.E. Stein, *An Integrated Method for Spectrum Extraction and Compound Identification from GC/MS Data*, J. Am. Society for Mass Spectrometry (1999) *available at* http://chemdata.nist.gov/dokuwiki/lib/exe/fetch.php?media=chemdata:method.pdf ................................................................................................................................ 9

*Standard Operating Procedures*, Houston Forensic Science Center § 8.5 (issued May 5, 2014) *available at* http://www.houstonforensicscience.org/sop/CS/FAD-CS-SOP%20issued%2005-05-14-v2.pdf .................................................................... 9, 11

*The Importance of Area and Retention Time Precision in Gas Chromotography*, Agilent Technologies (Sept. 16, 2005) *available at* http://www.agilent.com/cs/library/technicaloverviews/public/5989-3425EN.pdf 9

*Thin Layer Chromatography*, C.U. Boulder (2015) *available at* http://orgchem.colorado.edu/Technique/Procedures/TLC/TLC.html ................. 11

William Reusch, *Mass Spectrometry,* Michigan State University (May 5, 2013) *available at* http://www2.chemistry.msu.edu/faculty/reusch/virttxtjml/spectrpy/massspec/masspec1.htm ............................................................................................................. 9

## STATEMENT REGARDING ORAL ARGUMENT

Appellant is requesting that the Court of Criminal Appeals draw a clear distinction between a controlled substance and an adulterant and dilutant for purposes of determining whether there is a trace amount of controlled substance present in the evidence. Oral argument will be helpful to explain why Appellant's case highlights the need for a clear distinction between the two definitions. Additionally, oral argument would provide Appellant the opportunity to help resolve any questions the Court may have regarding the technology behind controlled substance identification.

## STATEMENT OF THE CASE

Appellant was arrested by officers for failing to signal a left turn. (4 R.R. at 10-11). Before impound Appellant's truck, the police performed a search of the truck. (4 R.R. at 11). Inside the truck, police found a crystalline substance which they believed to be methamphetamine, which Appellant claimed consisted of "bath salts," and which police claimed field tested positive using a test for amphetamine-class drugs. (3 R.R. at 19-20; 4 R.R. at 32-34). The crystalline substance was analyzed in the police laboratory by presumptive chemical test (negative), an ultraviolet/visible spectrophotometry test (negative), a fourier transform infrared spectroscopy (no acceptable match), and gas chromatography / mass spectrometry[1] (negative). (4 R.R. at 63-65). The analyst concentrated the sample crystalline substance and detected cocaine using GC/MS and thin layer chromatography. (4 R.R. at 65-66).

---

[1] Hereinafter "GC/MS."

## STATEMENT OF PROCEDURAL HISTORY

Appellant was arrested for possession of substance in penalty group 1 , ≥ 1 g. and < 4 g (methamphetamine) on July 11, 2013 and was indicted for possession of substance in penalty group 1 , ≥ 1 g. and < 4 g (cocaine) in Cause 1394200 in the 351st District Court of Harris County, Texas on September 26, 2013. (C.R. at 6, 14). On October 28, 2014, Appellant was convicted of possession of substance in penalty group 1 , ≥ 1 g. and < 4 g (cocaine) after a jury trial and was sentenced to 35 years in prison. (C.R. at 76). On November 5, 2014, Appellant filed notice of appeal. On November 10, 2015, Appellant's conviction was affirmed in a memorandum opinion in Cause 01-14-00901-CR. On November 13, 2015, Appellant filed a motion for rehearing. On November 24, 2014, the First Court of Appeals denied Appellant's motion for rehearing.

## GROUNDS FOR REVIEW

**Ground One**

The Court of Appeals erred by holding that conclusory expert testimony was sufficient to support Appellant's conviction, in contravention of the rule that an "expert's simple *ipse dixit* is insufficient to establish a matter" *Coble v. State*, 330 S.W.3d 253, 277 n. 62 (Tex. Crim. App. 2010)

**Ground Two**

The Court of Appeals erred by holding that Appellant's mere possession of a crystalline substance Appellant claimed to be "bath salts" was sufficient to uphold a

conviction for a nearly undetectable amount of cocaine, in conflict with the rule set forth in *King v. State*, 895 S.W.2d 701 (Tex. Crim. App. 1995)

**REASONS FOR REVIEW**

**1. The Court of Appeals had decided an important question of state law that has not been, but should be, settled by the Court of Criminal Appeals**

The Court of Appeals concluded that regardless of whether the amount of cocaine present, by itself, would constitute a trace amount, where the "adulterants or dilutants" are visible and measurable, the mixture should not be treated as a trace amount of a controlled substance. *Lamb v. State*, 01-14-00901-CR, 2015 WL 6933120 *3 (Tex. App.–Houston [1st Dist.] Nov. 10, 2015) (mem. op., not designated for publication). This holding significantly alters the rule that "when the quantity of a substance possessed is so small that it cannot be measured, there must be evidence other than mere possession to prove that the defendant knew the substance in his possession was a controlled substance." *King v. State*, 895 S.W.2d 701, 703–704 (Tex. Crim. App. 1995); TEX. R. APP. P. R. 66.3(b).

**2. The Court of Appeals has decided an important question of state law in a way that conflicts with Court of Criminal Appeals precedent**

The Court of Appeals treated Appellant's argument that the expert testimony in this case was conclusory as a challenge to the admissibility of the evidence. *Lamb*, 2015 WL 6933120 at *3. However, Appellant challenged the expert testimony as mere *ipse dixit* insufficient to support the verdict. *See Coble v. State*, 330 S.W.3d 253, 277 n. 62 (Tex. Crim. App. 2010). This Court should grant review as the Court of Appeals's

3

analysis is incorrect and conflicts with state law. *See Shelby v. State*, 819 S.W.2d 544, 545 (Tex. Crim. App. 1991) (granting petition for discretionary review to determine whether court of appeals applied the correct analysis); TEX. R. APP. P. R. 66.3(c).

## ARGUMENT

### I. The Court of Appeals erred by holding that conclusory expert testimony was sufficient to support Appellant's conviction, in contravention of the rule that "an expert's simple ipse dixit is insufficient to establish a matter" *Coble v. State*, 330 S.W.3d 253, 277 n. 62 (Tex. Crim. App. 2010)

#### A. Due process imposes minimum standards the testimony required to support a conviction for possession of a controlled substance

Though cases involving controlled substances are common, there is scant jurisprudence governing the expert testimony required to prove the identity of a controlled substance. Generally, lay testimony is insufficient to establish the identity of a controlled substance. *Curtis v. State*, 548 S.W.2d 57, 58–59 (Tex. Crim. App. 1977). Additionally, presumptive chemical tests are insufficient to prove that evidence contains a particular controlled substance. *Id.* at 59. This is where the jurisprudence stops.

What limitations does the right to due process impose upon expert testimony required to support a conviction? Regardless of what type of evidence the State offers, the State's evidence must amount to more than a mere modicum: "it could not be argued that such a 'modicum of evidence' could by itself rationally support a conviction beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 320 (1979). In order to determine whether there is enough evidence to support a conviction, a

4

reviewing court must measure the *quality* of the evidence offered in the case: "[l]egal sufficiency of the evidence is a test of adequacy, not mere quantity. Sufficient evidence is such evidence, in character, weight, or amount, as will legally justify the judicial or official action demanded." *Brooks v. State*, 323 S.W.3d 893, 917 (Tex. Crim. App. 2010). Like any other evidence, expert evidence must be sufficient to establish an essential fact. *See e.g. Kirsch v. State*, 306 S.W.3d 738, 745 (Tex. Crim. App. 2010) (Standing alone, BAC-test results are insufficient to prove intoxication at the time of driving).

## B. Measuring the quality of expert testimony in a criminal case

It is not the role of an appellate court to re-examine a factfinders's conclusions. *Ex Parte Harleston*, 431 S.W.3d 67, 70 (Tex. Crim. App. 2014) (the factfinder is in the best position to evaluate the credibility of testifying witnesses). Correspondingly, the appellate process is not usually conducted in a way that allows an appellate court to investigate the accuracy of an expert opinion.[2] *See N.N. v. Inst. for Rehab. & Research*, 234 S.W.3d 1, 21 (Tex. App.-Houston [1st Dist.] 2006) *withdrawn by* No. 01-02-01101-CV, 2007 WL 4279613 (Tex. App.-Houston [1st Dist.] Dec. 5, 2007). Instead, the reviewing court simply ensures that there is a record-based foundation for the expert's opinion and that the opinion is linked to the facts of the case. *See e.g. Hensley v. State*,

---

[2] Appellant does not dispute that *"*[m]ass spectrometry following gas chromatography has been called an extremely reliable specific test for the measurement, separation and identification of particular organic compounds—drugs, among them," only that there is no proof of the actual analysis conducted in this case. 54 AM. JUR. PROOF OF FACTS 3d 381 (1999).

No. 02–13–00190–CR, 2014 WL 1999307, 5 (Tex. App.–Fort Worth May 15, 2014, no pet.)(mem. op., not designated for publication) (Evidence was insufficient where fingerprint expert failed to properly link defendant's fingerprints to the evidence). Requiring that expert opinions are supported by a factual basis ensures a minimal "quality of the evidence and the level of certainty it engenders in the factfinder's mind." *Brooks*, 323 S.W.3d at 918 (J. Cochran, concurring). On the other hand, "if no basis for the opinion is offered, or the basis offered provides no support, the opinion is merely a conclusory statement and cannot be considered probative evidence, regardless of whether there is no objection." *Jelinek v. Casas*, 328 S.W.3d 526, 536 (Tex. 2010). So while the appellate court is an inappropriate venue to challenge the *accuracy* of foundational data supporting an expert's opinion or the opinions themselves, it is the appropriate place to challenge the *absence* of the required foundational data. *Id.*

### C. An expert's bare conclusions or *ipse dixit* are insufficient to establish a fact of consequence in a criminal case

In *Coble*, this Court addressed the issue of the admissibility of the bare conclusions of an expert. *Coble*, 330 S.W.3d 253. After turning to civil law for guidance, the Court concluded that expert *ipse dixit* is inadmissible:

> Although expert opinion testimony often provides valuable evidence in a case, 'it is the basis of the witness's opinion, and not the witness's qualifications or his bare opinions alone, that can settle an issue as a matter of law; a claim will not stand or fall on the mere *ipse dixit* of a credentialed witness. […] An expert's simple *ipse dixit* is insufficient to

6

establish a matter; rather, the expert must explain the basis of his statements to link his conclusions to the facts.

*Id.* at 277 n. 62.[3] An expert's *ipse dixit* is inadmissible because it has no evidentiary value and, in a civil context, is insufficient to survive summary judgment. *See Hamilton v. Wilson*, 249 S.W.3d 425, 427 (Tex. 2008) ("[C]onclusory statements, even from experts, are not sufficient to support or defeat summary judgment."). In the criminal context, a conclusory statement is insufficient to establish even probable cause. *Illinois v. Gates*, 462 U.S. 213, 239 (1983). If a conclusory statement is insufficient to prove probable cause in a criminal case or survive summary judgment in a civil case, it is of insufficient quality to support a conviction where the State's burden of proof is greater than in any other context. *See e.g. Jelinek v. Casas*, 328 S.W.3d at 536-538 (Expert's conclusory testimony insufficient to prove causation in a civil case).

### D. In Appellant's case, the expert testimony and laboratory report were conclusory and insufficient to support a conviction for possession of a controlled substance

#### 1. The laboratory report has no evidentiary value

Laboratory casefiles are often condensed and tendered into evidence as "one-liner" reports, providing a bare conclusion on whether analysts detected a controlled substance during testing:

> Generally crime labs provide what might be called "one-liner" reports, which are short and to the point but which also, often by design, manage

---

[3] Citing *Burrow v. Arce*, 997 S.W.2d 229, 235 (Tex.1999) and *Earle v. Ratliff*, 998 S.W.2d 882, 890 (Tex.1999).

to hide all the important data needed for an effective review. Often, nothing of substance is provided[.]

*Edward J. Fitzgerald*, INTOXICATION TEST EVIDENCE § 68:16 (2d. ed.). The laboratory report offered as evidence to support Appellant's provides information about the evidence tested (item: 1.1, ziplock with plastic bag with crystalline substance), the weight of the evidence (net weight: 1.77 grams), and the conclusion of the analyst (results: contains cocaine), but it offers no details about the analysis performed. (7 R.R. at State's Ex. 5). The laboratory report is the quintessential conclusory opinion, reporting an opinion without any factual support, and carries no evidentiary value. (7 R.R. at State's Ex. 5); *see State v. Cunningham*, 108 N.C. App. 185, 194 (1992) (differentiating conclusory laboratory report from the analysis utilized by chemist to reach such a conclusion).

    **2. The analyst's testimony that the analysis of the crystalline substance indicated the crystalline substance "contains cocaine" is insufficient to support Appellant's conviction**

    **a. GC/MS**

Unlike a medical examiner who physically examines wounds or a psychologist who observes the symptoms of a person's mental disease, a criminalist using GC/MS relies entirely upon the instrumentation to identify a controlled substance. *See Standard Operating Procedures*, HOUSTON FORENSIC SCIENCE CENTER § 8.5 (issued May 5,

2014).[4] While a criminalist may understand the theory behind and operation of a GC/MS instrument, the instrument itself analyzes the sample. First, the chromatography portion of the GC/MS instrument separates the different component molecules in a sample into groups, measures the time it takes each group of molecules to pass through the machine, measures the relative amounts of the different molecules, and records those measurements in a chromatogram. *The Importance of Area and Retention Time Precision in Gas Chromotography*, Agilent Technologies (Sept. 16, 2005).[5] Next, the mass spectrometer portion of the GC/MS instrument ionizes each group of molecules into molecular ions (a charged version of the whole molecule) and fragment ions (smaller, charged fragment molecules), sorts the ions by charge and mass, and detects the mass and charge of the ions. William Reusch, *Mass Spectrometry,* MICHIGAN STATE UNIVERSITY (May 5, 2013).[6] The molecules do not always fragment and register perfectly – sometimes spectra are hidden by a larger background peak or are only present below the detection threshold. S.E. Stein, *An Integrated Method for Spectrum Extraction and Compound Identification from GC/MS Data*, J. AM. SOCIETY FOR MASS SPECTROMETRY (1999).[7] Therefore, in order

---

[4]     *Available at* http://www.houstonforensicscience.org/sop/CS/FAD-CS-SOP%20issued%2005-05-14-v2.pdf

[5] *Available at* http://www.agilent.com/cs/library/technicaloverviews/public/5989-3425EN.pdf

[6] *Available at* http://www2.chemistry.msu.edu/faculty/reusch/virttxtjml/spectrpy/massspec/massspec1.htm.

[7] *Available at* http://chemdata.nist.gov/dokuwiki/lib/exe/fetch.php?media=chemdata:method.pdf

to "match" a spectra with a known substance, a computer makes statistical calculations comparing the observed values with an internal library of known substances. The computer orders the best statistical comparisons by likelihood and displays the results. *Id.*



**Figure 1: Sample output from a GC/MS instrumental analysis of a substance containing cocaine, including a full scan chromatogram (top-left), the mass spectrum of an individual peak on the chromatogram (bottom-left), and an internal library reference for cocaine(right).** Maria João Valente et. al, *Chromatographic Methodologies for Analysis of Cocaine and Its Metabolites in Biological Matrices*, INTECH (2012) *available at* http://cdn.intechopen.com/pdfs-wm/31530.pdf.

The point of this explanation is simply to show how GC/MS instrumentation functions without the need for the assistance or intervention of the analyst and to highlight the limited the role of the analyst in the process. The analyst prepares samples, ensures the proper operation of the instrument, prints out the results of the

analysis, and double-checks the observed values and the reference standards that the substance is "matched" with. *Standard Operating Procedures* §§ 8.5.2, 8.6. An analyst's conclusion that the GC/MS testing indicated the presence of a controlled substance is supported by the chromatograms and mass spectra linking the tested sample to a known controlled substance. *See Hensley*, 2014 WL 1999307 at 5. Without this critical data, the expert's testimony that the GC/MS instrumentation indicated that the crystalline substance "contains cocaine" lacks foundation and has no evidentiary value. (4 R.R. at 66).

### b. Thin layer chromatography

Thin layer chromatography is a laboratory technique where visual comparison of the chromatogram from the sample and the known controlled substance is used to verify a "positive" result. *See* Standard Operating Procedures § 15.6; *Thin Layer Chromatography*, C.U. Boulder (2015).[8] However, the evidentiary value of thin layer chromatography is limited, as it is merely a presumptive test and cannot conclusively identify a controlled substance. (7 R.R. at 66); *Standard Operating Procedures* § 3.5.1. Presumptive chemical tests are insufficient to support a conviction for possession of a controlled substance. *Curtis*, 548 S.W.2d at 59. Therefore, the presumptive thin layer chromatography test performed in this case is insufficient to support the verdict. (7 R.R. at 66). Furthermore, the expert failed to provide the observational basis for her

---

[8] *Available at* http://orgchem.colorado.edu/Technique/Procedures/TLC/TLC.html

opinion regarding the thin layer chromatography test. (7 R.R. at 66). Neither the presumptive test nor the expert testimony are sufficient to support conviction.



**Figure 2: Chromatogram comparing an unknown substance to reference standards for cocaine, heroin, and methamphetamine by thin layer chromatography.** *Photo 9 – Thin Layer Chromatography*, IOWA DEP'T OF PUBLIC SAFETY (2006) *available at* http://www.dps.state.ia.us/DCI/lab/drugidentification/tlc.shtml.

### 3. Taken together, the laboratory report and the expert testimony are insufficient to prove that the crystalline substance "contains cocaine"

As the laboratory report is a conclusory statement without any evidentiary value and the expert testimony consists of only conclusory statements without any underlying data supporting those statements (i.e. the mass spectra and chromatograms), there is insufficient evidence to support the conclusion that the crystalline substance contained cocaine.

**II. The Court of Appeals erred by holding that Appellant's mere possession of a crystalline substance Appellant claimed to be "bath salts" was sufficient to uphold a conviction for a nearly undetectable amount of cocaine, in contravention in the rule set forth in *King v. State*, 895 S.W.2d 701 (Tex. Crim. App. 1995)**

**A. The visible presence of "adulterants or dilutants" does not establish that a defendant possessed anything more than a trace amount of a controlled substance**

**1. The Court of Appeals included the weight of adulterants and dilutants when determining whether there was a trace amount of cocaine present in Appellant's case**

The Court of Appeals concluded that because the "adulterants and dilutants" were visible in Appellant's case, that there was more than a trace amount of cocaine present:

> Appellant argues that Noyola's testimony about the multiple tests on the substance show that the amount of cocaine in the substance was only a trace amount. When she could not get an identification of any drug in the substance on the presumptive tests, Noyola began performing [confirmatory] tests. One [confirmatory] test was [indeterminate]. The second was negative. It was not until Noyola concentrated the sample and ran the second test again that she was able to obtain any determination of a controlled substance, cocaine. She then ran a final presumptive test and also received an identification of cocaine. Appellant argues that the need to run multiple tests and, then, to ultimately concentrate the sample before any reading of cocaine could be achieved establishes that the 1.77 grams of the substance found in Appellant's car could not have been more than a trace amount.[9]
> Even accepting the merits of Appellant's reasoning, he cannot prevail. Regardless of the amount of cocaine present in the substance, it was present, and it was mixed with "adulterants and dilutants." Regardless of whether the amount of cocaine by itself would have

---

[9] The analyst's testimony additionally indicates that the cocaine was present at an insignificant level: "If there's a bunch of adulterants and dilutants, it will probably take the form of the adulterants and dilutants."(4 R.R. at 74).

13

constituted a trace amount, with the adulterants and dilutants, it was visible and weighed 1.77 grams. Accordingly, there was sufficient evidence for the jury to determine that Appellant possessed more than one gram and less than four grams of cocaine. This is not a trace amount.

*Lamb*, 2015 WL 6933120 at *3 (citations omitted). The Court of Appeals held that "because the amount of cocaine was visible and measureable, the evidence is sufficient to support the jury's determination that Appellant knew the substance was cocaine." *Lamb*, 2015 WL 6933120 at 5.

### 2. The Court of Appeals's reasoning is circular, dangerous, and should be rejected

In the context of Section 481.115, an "adulterant or dilutant" does not exist outside of the presence of a controlled substance in penalty group 1. TEX. HEALTH & SAFETY CODE ANN. § 481.002 (West 2011)(49); TEX. HEALTH & SAFETY CODE § 481.115(a, c). An "adulterant or dilutant" is defined as: "any material that increases the bulk or quantity of a **controlled substance**, regardless of its effect on the chemical activity of the **controlled substance**." TEX. HEALTH & SAFETY CODE § 481.002(49). The Controlled Substance Act defines "controlled substance" as:

> "**a substance**, including a drug, an adulterant, and a dilutant, **listed in Schedules I through V or Penalty Groups 1, 1-A, or 2 through 4**. The term includes the aggregate weight of any mixture, solution, or other substance containing a controlled substance."

TEX. HEALTH & SAFETY CODE § 481.002(5). To consider the substances mixed with controlled substances to actually be controlled substance would create a definition which is "completely circular and explains nothing." *Nationwide Mut. Ins. Co. v. Darden*,

14

503 U.S. 318, 323 (1992). Under that circular definition, a "controlled substance" would mean *a controlled substance mixed with any substance* and "adulterant or dilutant" would mean the same thing - *any substance mixed with a controlled substance.* The context in which to consider adulterants or dilutants, as suggested by the plain language of the definition of "controlled substance," is in calculating the aggregate weight of a controlled substance and determining the appropriate punishment range. TEX. HEALTH & SAFETY CODE §§ 481.002(5); 481.115(a).

As an example explaining why the Court of Appeals's analysis must be rejected, consider a police officer who uses a sensitive test to detect cocaine in a homeowner's toilet bowl. *See Seals v. State*, 187 S.W.3d 417, 423 (Tex. Crim. App. 2005) (J. Womack, concurring) (Even toilet bowl water could be considered an adulterant or dilutant). Upon laboratory analysis, it is determined that there is a nearly undetectable, trace amount of cocaine in the toilet water. Using the Court of Appeals's rationale, because the toilet water was visible, the homeowner's mere possession of the toilet water is sufficient to prove intentional and knowing possession of cocaine. But how does the mere presence of water, not a material inherently associated with narcotics possession, suggest that the homeowner should be aware of the trace presence of cocaine within the water? How could a factfinder reasonably distinguish between the innocent, unwitting homeowner whose guest had taken cocaine the night before and had used

the bathroom[10] or whose water was tainted by trace background levels of cocaine in the water supply[11] and the person who tried to dispose of cocaine in the toilet or who was using cocaine in the bathroom? When the entire purpose of the "mere possession" rule is to protect an innocent individual who may be unaware of the presence of controlled substance residues or contamination, disregarding that rule permits the jury to draw irrational conclusions from ambiguous facts.

### B. There is no testimony that established that Appellant knew or should have known the crystalline substance contained cocaine

#### 1. The testimony regarding the apparent form of the crystalline substance

Appellant was arrested possessing a crystalline substance, which he claimed to be "bath salts," a loose family of "recreational drugs created specifically to skirt the law as it existed at the time of the chemical's creation". *Lamb*, 2015 WL 6933120 at *4. On inspection of the substance, police officers believed the crystalline substance to be methamphetamine due to the shape of the crystals:

> Q. (By the Prosecution) Based on your experience, what did the substance look like to you?
> A. (By Officer Gallegos) Due to its crystal formation, we believed it to be methamphetamine.

---

[10] Unmetabolized cocaine can be detected in the urine and saliva of cocaine-users, even days after the last use of cocaine. Edward J. Cone & William W. Weddington, Jr. *Prolonged Occurrence of Cocaine In Human Saliva and Urine after Chronic Use*, 13 J. ANALYTICAL TOXICOLOGY 65 (1989).

[11] Pharmaceuticals and illicit substances can persist in tapwater even after the water is treated. Christian G. Daughton, *Illicit Drugs: Contaminants in the Environment and Utility in Forensic Epidemiology*, 210 REV. OF ENVIRON. CONTAMINATION AND TOXICOLOGY 59, 77-79 (2011)

(4 R.R. at 33). The analyst did not testify that the structure of the crystalline substance revealed the presence of cocaine within the substance, but merely testified that cocaine can take the form of adulterants and dilutants:

> Q. Is cocaine -- does cocaine come in a powder form?
> A. Cocaine can come in different forms. It can come in a powder form. I've seen it in a liquid form. I've seen it in a chunk substance, or commonly known as crack cocaine. It can come in any form. If there's a bunch of adulterants and dilutants, it will probably take the form of the adulterants and dilutants.
> Q. What do you mean by that?
> A. That, you know, for example, I've seen cocaine in water, in liquid. So the adulterants could be the liquid because it's adding to the cocaine weight.
> Q. And in this case, a crystalline substance, you're saying that cocaine can take the appearance of the adulterants and dilutants?
> A. Not cocaine, the compound, but other adulterants and dilutants can interfere. We normally see cocaine in powder or in chunk, but like I stated, I've seen it in other forms as well. I've seen it in liquid, I've seen it in gooey, sticky forms or substances.

(4 R.R. at 74-75).

**2. There was no testimony that any person in Appellant's shoes would have suspected there to be cocaine present in the crystalline substance**

There was no testimony that any person observing the crystals could – or should – have expected that the crystalline substance contained cocaine. The State's laboratory expert testified that cocaine is typically found in chunk or powder form and that she had previously found cocaine in a liquid or gooey form, but never testified that she observed cocaine in a crystalline form. (4 R.R. at 72, 75-76). There was no testimony that crystalline substances are used as binding agents to help make

17

cocaine visible or usable.[12] *See Frierson v. State*, 839 S.W.2d 841, 846 (Tex. App.—Dallas 1992, pet. ref'd) (Binding agents make drugs with small effective dosages visible and easier to use). There was no testimony that a person possessing bath salts knowingly possesses contraband, particularly when such substances were historically conspicuously sold in stores. Jeffrey C. Grass, *Mcfadden v. United States: Deconstructing Synthetic Drug Prosecutions*, CHAMPION 34, 35 (2015). There was not even an instruction on the doctrine of transferred intent. TEX. PENAL CODE ANN. § 6.04(b)(1) (West 2011). Thus the State's conviction is based on Appellant's knowing possession of **cocaine**, and not bath salts or methamphetamine.

The Court of Appeals indicated that the jury could have convicted Appellant by rejecting Appellant's claim that the crystalline substance consisted of bath salts: "[a] jury could have reasonably determined that Appellant's statement was designed to take advantage of any ambiguity on the legality of what he claimed the substance to be." *Lamb*, 2015 WL 6933120 at *4. But whether or not Appellant thought he possessed bath salts or sought to take advantage of the legal gray-area occupied by

---

[12] Whether a binding agent or bulking agent is intentionally or commonly added to a controlled substance would be relevant to the question of whether a defendant possessed the relevant culpable mental state in a drug case. It might be fair to conclude that a nearly undetectable amount of cocaine mixed with cutting agents seized from a defendant could indicate a desire to possess cocaine while a trace amount of cocaine mixed with dirt and pocket lint may not indicate the knowing possession of cocaine.

bath salts, [13] the question remains: "is the evidence sufficient to support the conviction?" *Menges v. State,* 9 S.W. 49, 50–51 (Tex. Ct. App. 1888) (State must prove facts necessarily inconsistent with the innocence of the accused). Without an admission by Appellant that he possessed cocaine and without testimony that Appellant could or should have known that the crystalline substance contained cocaine, there is no direct evidence that reflects that Appellant was aware of the drug's presence. Without any basic facts which would support the jury's conclusion that Appellant intentionally or knowingly possessed **cocaine**, the jury's inference was unreasonable and is not supported by the record. *C.f. Jackson v. Virginia*, 443 U.S. at 319 (holding that the jury may fairly draw reasonable inferences from basic facts to ultimate facts). There is simply no evidence "that the defendant knew the substance in his possession was [cocaine]." *Shults v. State*, 575 S.W.2d 29, 30 (Tex. Crim. App. 1979).

### 3. There is no other circumstantial evidence which would connect Appellant to the nearly undetectable amount of cocaine in this case

Finally, the State did not offer any circumstantial evidence in Appellant's case that would support the conclusion that Appellant knowingly possessed the nearly

---

[13] *See e.g. Jelinek v. Casas*, 328 S.W.3d at 532 ("When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is no more than a scintilla and, in legal effect, is no evidence." The same is true when the evidence equally supports two alternatives: When the circumstances are equally consistent with either of two facts, neither fact may be inferred.") (citations omitted).

undetectable amount of cocaine involved in this case. There was no evidence in this case that suggested Appellant's intoxication or recent use of cocaine. *King*, 895 S.W.2d at 703. As Appellants' claim that the crystalline substance consisted of "bath salts" is exculpatory or ambiguous at worst, there is no evidence that suggests that Appellant knowingly possessed contraband – much less *cocaine. Joseph v. State*, 897 S.W.2d 374, 376 (Tex. Crim. App. 1995). There was no paraphernalia discovered along with the crystalline substance. *King*, 895 S.W.2d at 702; *Joseph*, 897 S.W.2d at 376. Simply put, there was nothing more than the mere possession of a nearly undetectable amount of cocaine supporting the State's theory that Appellant knowingly possessed cocaine, and this evidence is insufficient to support Appellant's conviction. *Shults*, 575 S.W.2d at 30.

**PRAYER**

Appellant prays that this Court reverse and remand his case with instructions to acquit the Appellant.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas

**/s/** Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender
Harris County Texas
1201 Franklin Street, 13th Floor
Houston Texas 77002
(713) 368-0016

(713) 386-9278 fax
TBA No. 24059981
nicolas.hughes@pdo.hctx.net

## CERTIFICATE OF SERVICE

I certify that a copy of this Appellant's Petition for Discretionary Review (Bullock) has been served upon the Harris County District Attorney's Office − Appellate Section and upon the State Prosecuting Attorney, on December 18, 2015 by electronic service.

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

## CERTIFICATE OF COMPLIANCE

This document complies with the typeface requirements of TEX. R. APP. P. 9.4(e) because it has been prepared in a conventional typeface no smaller than 14-point for text and 12-point for footnotes. This document also complies with the page and word count limitations of TEX. R. APP. P. 9.4(i), if applicable, because it contains 4,420 words excluding portions not to be counted under TEX. R. APP. P. 9.4(i)(1).

/s/ Nicolas Hughes
**NICOLAS HUGHES**
Assistant Public Defender

**APPENDIX**

A. Opinion, *Lamb v. State*, 01-14-00901-CR, 2015 WL 6933120 (Tex. App.—

Houston [1st Dist.] Nov. 10, 2015) (mem. op., not designated for publication)

**Opinion issued November 10, 2015**



In The

# Court of Appeals

For The

# First District of Texas

_____

## NO. 01-14-00901-CR

_____

**TRAVIS LAMB, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 351st District Court**
**Harris County, Texas**
**Trial Court Case No. 1394200**

## MEMORANDUM OPINION

The State of Texas charged Appellant, Travis Lamb, by indictment with possession of cocaine, more than one gram and less than four grams.[1]   Lamb pleaded not guilty.  The jury found him guilty.  Pursuant to an agreement between

---

[1]     *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), .115(a), (c) (Vernon 2010).

Appellant and the State, the trial court assessed punishment at 35 years' confinement. In one issue on appeal, Appellant argues the evidence was insufficient to establish that he knowingly possessed more than a trace amount of cocaine.

We affirm.

## Background

Officers R. Perez and F. Gallegos, officers with the Houston Police department, were on patrol on the night of July 10, 2013. They observed Appellant driving his car and turning without signaling. The officers performed a traffic stop. During the course of the stop, Appellant admitted he had been driving without a license. The officers arrested Appellant. Officer Gallegos performed an inventory of the car in preparation for a tow truck to take the car.

During the inventory, Officer Gallegos found a clear plastic bag containing a crystalline substance. The baggie had been in an open compartment on the driver's door. The officers discussed between themselves whether the substance might be methamphetamine. Appellant heard their conversation and said, "It's not meth. It's bath salts." Officer Gallegos field-tested the substance. The field test identified the substance as methamphetamine.

The State charged Appellant with possession of methamphetamine. Later, a forensic examiner, A. Noyola, determined that the substance in the baggie

2

contained cocaine.  Noyola measured the weight of the substance at 1.77 grams.  The State modified the indictment to charge Appellant with possession of cocaine.

At trial, Noyola described the process for testing the substance.  She explained that the types of tests she performs are either presumptive or confirmatory.  Presumptive tests do not confirm the identity of the substance, but indicate what substances could be present.  A confirmatory test, as its name suggests, confirms all the compounds present in the substance.

Noyola testified that all of the presumptive tests she performed at the beginning (including chemical screening and ultraviolet spectrophotometry) were negative, meaning no drugs were identified.  Noyola then moved on to confirmatory tests.  One test, Fourier transform infrared spectroscopy, could not produce an acceptable match.  Another, gas chromatography mass spectrometry, came out negative.  Noyola ran this last test a second time with a greater concentration of the sample.  This time, the test identified cocaine in the sample.  Finally, Noyola ran another presumptive test, which was only identified as TLC.  This presumptive test also identified the presence of cocaine.  Neither of the positive tests identified the amount or concentration of cocaine within the sample.

## Sufficiency of the Evidence

In his sole issue on appeal, Appellant argues the evidence was insufficient to establish that he knowingly possessed more than a trace amount of cocaine.

3

**A.      Standard of Review**

We review the sufficiency of the evidence establishing the elements of a criminal offense for which the State has the burden of proof under a single standard of review. *Matlock v. State*, 392 S.W.3d 662, 667 (Tex. Crim. App. 2013) (citing *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010)). This standard of review is the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979). *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013). Pursuant to this standard, evidence is insufficient to support a conviction if, considering all the record evidence in the light most favorable to the verdict, no rational fact finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *In re Winship*, 397 U.S. 358, 361, 90 S. Ct. 1068, 1071 (1970); *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009); *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007). We can hold evidence to be insufficient under the *Jackson* standard in two circumstances: (1) the record contains no evidence, or merely a "modicum" of evidence, probative of an element of the offense, or (2) the evidence conclusively establishes a reasonable doubt. *See Jackson*, 443 U.S. at 314, 318 & n.11, 320, 99 S. Ct. at 2786, 2789 & n.11; *see also Laster*, 275 S.W.3d at 518; *Williams*, 235 S.W.3d at 750.

The sufficiency-of-the-evidence standard gives full play to the responsibility of the fact finder to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. Crim. App. 2007). An appellate court presumes that the fact finder resolved any conflicts in the evidence in favor of the verdict and defers to that resolution, provided that the resolution is rational. *See Jackson*, 443 U.S. at 326, 99 S. Ct. at 2793. In viewing the record, direct and circumstantial evidence are treated equally; circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt. *Clayton*, 235 S.W.3d at 778. Finally, the "cumulative force" of all the circumstantial evidence can be sufficient for a jury to find the accused guilty beyond a reasonable doubt. *See Powell v. State*, 194 S.W.3d 503, 507 (Tex. Crim. App. 2006).

**B.     Analysis**

Appellant was ultimately charged with possession of cocaine, more than one gram but less than four grams. *See* TEX. HEALTH & SAFETY CODE ANN. §§ 481.102(3)(D), .115(a), (c) (Vernon 2010). "[A] person commits an offense if the person knowingly or intentionally possesses a controlled substance listed in Penalty Group 1, unless the person obtained the substance directly from or under a valid prescription or order of a practitioner acting in the course of professional

practice." *Id.* § 481.115(a). Cocaine is listed in Penalty Group 1. *Id.* § 481.102(3)(D). The offense is a third degree felony "if the amount of the controlled substance possessed is, by aggregate weight, including adulterants or dilutants, one gram or more but less than four grams." *Id.* § 481.115(c). Appellant argues in his issue on appeal that the evidence was insufficient to show that he knowingly possessed cocaine and to show that the amount of cocaine was greater than a trace amount.

For knowingly possessing a controlled substance, "[i]f the controlled substance can be seen and measured, the amount is sufficient to establish the defendant knew it was a controlled substance." *Victor v. State*, 995 S.W.2d 216, 220 (Tex. App.—Houston [14th Dist.] 1999, pet. ref'd). In contrast, "[w]hen the quantity of a substance possessed is so small that it cannot be quantitatively measured, there must be evidence other than its mere possession to prove that the defendant knew the substance in his possession was a controlled substance." *Shults v. State*, 575 S.W.2d 29, 30 (Tex. Crim. App. 1979). Our disposition, then, of Appellant's argument that the record indicates he did not possess more than a trace amount of cocaine influences our determination of whether he knowingly possessed cocaine. Accordingly, we first address Appellant's argument that he only possessed a trace amount of cocaine.

One of Appellant's arguments challenging the weight of the cocaine is his claim that Noyola failed to establish the amount or concentration of cocaine in the substance. The State correctly argues it did not carry any burden to show this.

> Under the new Health and Safety Code definition, the State is no longer required to determine the amount of controlled substance *and* the amount of adulterant and dilutant that constitute the mixture. The State has to prove only that the aggregate weight of the controlled substance mixture, including adulterants and dilutants, equals the alleged minimum weight.

*Melton v. State*, 120 S.W.3d 339, 344 (Tex. Crim. App. 2005); *see also* TEX. HEALTH & SAFETY CODE ANN. § 481.115(c) (making possession third degree felony "if the amount of the controlled substance possessed is, *by aggregate weight, including adulterants or dilutants*, one gram or more but less than four grams" (emphasis added)), § 481.002(49) (Vernon 2010) (defining "adulterant or dilutant" as "any material that increases the bulk or quantity of a controlled substance, regardless of its effect on the chemical activity of the controlled substance").

Appellant further argues that Noyola failed to provide any "foundational knowledge" for the jury to determine that the substance contained cocaine because she did not provide the data from the tests that identified cocaine within the substance. Noyola testified that the substance contained cocaine, and the trial court admitted a one-page report indicating the same. To the degree that he is arguing that this evidence should not have been admitted due to this alleged

7

deficiency, Appellant did not object to Noyola's testimony or to the admission of the report.

To preserve error regarding the admission of evidence, a party must make a specific and timely objection. TEX. R. APP. P. 33.1(a)(1); *Penry v. State*, 903 S.W.2d 715, 763 (Tex. Crim. App. 1995). This is as true of alleged unreliability of expert testimony as it is of other evidentiary issues. *See, e.g.*, *Stephens v. State,* 276 S.W.3d 148, 153 (Tex. App.—Amarillo 2008, pet. ref'd) (holding appellant did not preserve error when he neither objected to expert's testimony at trial nor requested a *Daubert* hearing).

Next, Appellant argues that Noyola's testimony about the multiple tests on the substance show that the amount of cocaine in the substance was only a trace amount. When she could not get an identification of any drug in the substance on the presumptive tests, Noyola began performing determinative tests. One determinative test was indeterminative. The second was negative. It was not until Noyola concentrated the sample and ran the second test again that she was able to obtain any determination of a controlled substance, cocaine. She then ran a final presumptive test and also received an identification of cocaine. Appellant argues that the need to run multiple tests and, then, to ultimately concentrate the sample before any reading of cocaine could be achieved establishes that the 1.77 grams of

8

the substance found in Appellant's car could not have been more than a trace amount.

Even accepting the merits of Appellant's reasoning, he cannot prevail. Regardless of the amount of cocaine present in the substance, it was present, and it was mixed with "adulterants and dilutants." *See* TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (defining "adulterants and dilutants"). Regardless of whether the amount of cocaine by itself would have constituted a trace amount, with the adulterants and dilutants, it was visible and weighed 1.77 grams. *See Melton*, 120 S.W.3d at 344 (holding State has to prove only that aggregate weight of controlled substance mixture, including adulterants and dilutants, equals alleged minimum weight). Accordingly, there was sufficient evidence for the jury to determine that Appellant possessed more than one gram and less than four grams of cocaine. *See id.* This is not a trace amount. *See Shults*, 575 S.W.2d at 30 (defining trace amount to be quantity of *substance* possessed so small that it cannot be quantitatively measured).

Appellant argues that Noyola failed to "identify which 'adulterants and diluatants' were contained within the crystalline substance." This was not necessary information, however. The Texas Legislature defined "adulterants and dilutants" to be "*any material* that increases the bulk or quantity of a controlled substance, *regardless of its effect on the chemical activity of the controlled*

*substance*." TEX. HEALTH & SAFETY CODE ANN. § 481.002(49) (emphasis added).

This encompasses blood waste from a failed attempt to inject methamphetamine.

*Seals v. State*, 187 S.W.3d 417, 418, 422 (Tex. Crim. App. 2005). This is true

even though the presence of blood would make the drug toxic if injected into the

body. *Id.* at 427 (Cochran, J., dissenting).

Anticipating this outcome, Appellant further argues, "The rules set forth in

[two Court of Criminal Appeals cases] regarding trace amounts of controlled

substances, even those invisible to the human eye, and the rule set forth in *Seals*,

transforming pretty much any substance mixed with a controlled substance into an

'adulterant or dilutant,' make felons of the innocent."[2] As Appellant's argument

establishes, however, the Court of Criminal Appeals has already ruled on the

matters he raises. As an intermediate court of appeals, we are bound to follow the

precedent of the Texas Court of Criminal Appeals. *Gonzales v. State*, 190 S.W.3d

125, 130 n.1 (Tex. App.—Houston [1st Dist.] 2005, pet. ref'd); TEX. CONST.

art. V., § 5(a) (providing that Court of Criminal Appeals is final authority for

---

[2]    In his reply brief, Appellant argues that due process requirements put limits on
what constitutes an adulterant or dilutant and on the quality of evidence that will
support a conviction for possession of a controlled substance. Appellant's due
process arguments were not raised in his primary brief. An appellant cannot raise
issues raised for the first time in a reply brief. *See* TEX. R. APP. P. 38.3 (limiting
reply brief to addressing matters raised in appellee's brief); *Barrios v. State*, 27
S.W.3d 313, 322 (Tex. App.—Houston [1st Dist.] 2000, pet. ref'd) (rejecting
review of argument raised for first time in reply brief).

interpreting criminal law in Texas). Appellant's argument is outside the scope of our review.

We turn now to the question of whether there was sufficient evidence to show that he knowingly possessed cocaine. Appellant does not challenge the sufficiency of the determination that he possessed the substance. Instead, he disputes that there was sufficient evidence to establish that he knew it was cocaine. We have held that the evidence was sufficient to establish that the substance found in Appellant's car contained cocaine, was visible, and weighed more than one gram. Because the substance contained cocaine and can be seen and measured, "the amount is sufficient to establish the defendant knew it was a controlled substance." *Victor*, 995 S.W.2d at 220.

Appellant points out his statement to the officers after they found the bag with the controlled substance. While the officers were discussing between themselves what type of controlled substance the bag might contain, Appellant volunteered, "It's not meth. It's bath salts." Appellant asserts that this statement establishes that he did not know the substance was cocaine. The State argues that it was not required to prove that he knew the substance was cocaine, only that he knew the substance was a controlled substance.[3] We do not need to resolve either

---

[3]     *But see King v. State*, 895 S.W.2d 701, 703 (Tex. Crim. App. 1995). ("Therefore, the State must prove, through other evidence, that appellant had knowledge that the substance in his possession was cocaine.").

11

of these arguments, however. While it is undisputed that Appellant made this statement, there was no requirement for the jury to conclude that this statement was honest and credit it. "With respect to testimony of witnesses, the jury is the sole judge of the credibility and weight to be attached thereto, and when the record supports conflicting inferences, we presume that the jury resolved the conflicts in favor of the verdict, and we defer to that determination." *Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014). Appellant argues elsewhere in his brief, "There is no guarantee that a person possessing . . . 'bath salts,' recreational drugs created specifically to skirt the law as it existed at the time of the chemical's creation, possesses a prohibited substance." A jury could have reasonably determined that Appellant's statement was designed to take advantage of any ambiguity on the legality of what he claimed the substance to be.[4] Because this determination would support the jury's verdict, we must defer to that determination. *See id.*

We hold that, because the amount of cocaine was visible and measureable, the evidence is sufficient to support the jury's determination that Appellant knew the substance was cocaine. *See Victor*, 995 S.W.2d at 220.

---

[4] Appellant argues, "There is no record-based or evidence-based reason to disbelieve [Appellant]'s assertion that he thought the drugs were 'bath salts.'" There is no reason to believe the assertion, either. Credibility determinations are left to the jury and are not subject to sufficiency-of-the-evidence reviews. *See Thomas v. State*, 444 S.W.3d 4, 8 (Tex. Crim. App. 2014).

We overrule Appellant's sole issue.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Brown.

Do not publish. TEX. R. APP. P. 47.2(b).